# Early & Lane's Appeal.

1. Where the stock of a corporation is assigned to the corporation itself as collateral security for a loan, the title of the assignor to the stock is so far divested that it cannot be sold under an execution against him.

2. Where a shareholder in a building association has assigned his stock to such association as security for a loan, and the loan is also secured by a judgment, upon a sale of his real estate by the sheriff, he may elect to have the value of the stock deducted from the amount of the judgment before the latter is permitted to share in the proceeds of the sale.

3. Where a shareholder has so elected, an attachment of the stock thereafter binds only the interest which remains after the stock has been applied to the payment of the judgment.

March 13th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas of *Luzerne county*: Of January Term 1879, No. 185.

[Early & Lane's Appeal.]

Appeal of Early & Lane, James S. Barron & Co. and O. Howard Blood, from the decree of the court dismissing the exceptions to and confirming the report of the auditor, appointed to distribute the proceeds of the sheriff's sale of the real estate of L. Schlesinger.

The fund for distribution was realized from a sale upon a judgment of Blood, and amounted to $950. There were a number of judgment-liens upon the property sold, the first of which was one of the Wyoming Building and Loan Association for $1000. The second judgment was one in favor of Mrs. Silverbach for $600, and the eighth, tenth and eleventh were in favor of Blood, Barron & Co. and Early & Lane, respectively. The first judgment was given by Schlesinger to the association, on September 29th 1870, to secure the payment of a loan of $1000, made to him by the association, and for the payment of which he at the same time assigned as collateral security, five shares of stock which he held in said association. On the 12th day of March 1877, these five shares of stock were sold as the property of Schlesinger, on a writ of fieri facias to April Term 1877, issued upon a judgment of James S. Barron & Co. to January Term 1877, and two other similar writs to April Term 1877, in favor of judgment-creditors of Schlesinger. The stock was purchased by the attorney who represented the three writs of execution upon which the sale was effected for the sum of $20. The purchase was made with the view to give his clients the benefit of the same. The return of sale was made in due form of law by the sheriff, and was entered of record in the ordinary way.

On the 24th September 1877, an auditor was appointed to distribute the real estate fund, and on the 22d November 1877, the counsel representing Schlesinger asked the auditor to apply the value of said five shares of stock in payment of the judgment in favor of the Wyoming Building and Loan Association, the first lien-creditor.

This claim was resisted by the association, for the reason that the same had been sold by other creditors of Schlesinger, and she asked to have the real estate fund applied in payment of her judgment. Subsequently this claim on behalf of Schlesinger was repeated in writing, and was based upon the assertion that the sheriff's sale of the stock on the fieri facias conferred no title upon the purchaser, because Schlesinger had previously assigned it as collateral security. The auditor's authority to try the validity of the sale in this collateral proceeding was denied. But the counsel representing the purchasers of the stock at the audit, apprehensive that the auditor would suspend the distribution and ask the court to determine the validity of the sale, issued attachment-executions against the stock upon the three judgments on which the fi. fa. had issued and the stock had been sold. These writs were issued and levies made on same 1st December 1877.

The auditor, however, assumed the jurisdiction to inquire into the validity of the sale of the stock, and found, as a matter of law, that it passed no title.   He defalked the value of said stock out of the judgment in favor of the Wyoming Building and Loan Association, the first lien-creditor, and payment of the balance of said judgment was awarded out of the real estate fund.  What remained of the real estate fund was distributed to the judgments immediately following in their order, and the creditors who purchased the stock did not receive anything.

The auditor, J. Vaughan Darling, Esq., in his report, inter alia, said :—

" It is obvious that at the threshold of the case lies the question of the validity of the sale of the stock to the attorney upon the fi. fa. to April Term 1877 ; since, if the purchaser took a legal title to the stock, it follows that the building association is entitled to the whole fund.

" Can the stock of a building association assigned to it, the association, as collateral to its own loan to the stockholder, be levied upon by and sold under a writ of fieri facias ?

" The Act of March 29th 1819, sect. 2d, Acts of 1819, p. 226–7, Laws of Penna., vol. 7, p. 217, is undoubtedly in force, notwithstanding the Act of 1836 ; and, under its provisions, stock standing in the name of the defendant and not claimed by another, may still be sold under a fieri facias :   Lex v. Potter, 4 Harris 295.   The scope of the act is in terms limited to cases ' of stock owned by any individual or individuals,' &c., ' in his or their own names.'   And it is not the exclusive remedy—attachment execution lien also : Weaver v. The Huntingdon Railroad Co., 14 Wright 314.  The stock in the case under discussion was assigned to the association, as collateral, it is true, but none the less assigned.   The assignment would seem to have been duly entered on the transfer book of the association.   Indeed, the assignment itself was offered " as a true copy of the original as contained in the transfer book of the association."   The certificate itself was kept in the name of the borrower who was entitled to its possession, and no memorandum of the assignment was made on the face of the certificate.   But this is immaterial, and would be even as against a purchaser of the certificate of value and without notice : Bank of Commerce Appeal, 23 P. F. Smith 59. On the whole facts the auditor is of opinion that the stock did not pass under the sale upon the fieri facias.   Whilst in a certain sense the borrower, Schlesinger, owned the stock in his own name, yet this is not the sense intended by the act.   In all cases where the stock is subject to a charge or lien, and much more so where the stock has been assigned as collateral, it is essential, in the words of the present chief justice in Weaver v. The Railroad, *supra*, to the interest of all parties and to save litigation, ' that the proceedings by attachment should be resorted to, and the precise

extent and character of the claim of the corporation ascertained before final execution.' The machinery provided by the second section of the Act of 1819 is wholly insufficient to effect justice in a case like the present, and it is only by a strained construction of the section itself that it can be made to appear applicable at all. The industry of the counsel representing the Silverbach and other judgments has furnished an authority in our own court directly in point.

" In Mulford *v.* Wersberger, 3 Leg. Reg. 99, the stock had been assigned to and held by the association as collateral to its loan. The court held that the stock was ' held in another name than that of the real owner thereof,' and therefore within the 32d section of the Act of 1836, requiring an affidavit and recognisance.

" The auditor, therefore, finds that, subject to the assignment as collateral to the association, Schlesinger owned the stock at the time of the sheriff's sale.

" This brings us to the second question : Is the value of the stock at the time of the sheriff's sale to be applied in reduction of the judgment of the association ?

" It would seem to be tolerably well settled that without an ' election' on the part of either the borrowing stockholder or the association to have dues, &c., applied on account of the judgment, or rather the debt for which both the judgment and the stock are collateral, payments on stock will not be so applied. ' Such payments are not *ipso facto* payments' on the lien : North Am. Build. Ass. *v.* Sutton, 11 Casey 463. The rule is admirably stated by AGNEW, C. J., in Spring Garden Asso. *v.* Tradesman's Loan Ass., 10 Wright 493. ' Payments to stock are not *ipso facto* payment to the mortgage (judgment) debt or loan. It is true, according to former decisions, the mortgagor may apply his payments on the stock to the mortgage-debt, a license to do so being implied in the nature of these building and loan transactions. The building association may also apply them by virtue of the terms of the assignment of the stock which is taken as a collateral security. But in order to effectuate application of payments on stock to the debt, it requires an act of appropriation by one or the other of the parties. Strangers to the transaction stand upon a different footing. They can require nothing which the parties do not.'

" If this be a correct statement of the law, it follows that any election or appropriation on the part of Schlesinger would be valid and binding, not only as against the association itself, but as against all creditors not holding liens upon the stock.

" It is true that no appropriation was made by Schlesinger until after the sale ; but is this necessarily fatal to his right to make such appropriation. It was strenuously argued by the counsel for the purchasers of the stock at the sale upon the fieri facias, and the creditors who subsequently attached the stock, that the sale of

the land concluded the debtor's right of election, and the principle was invoked that the course of distribution cannot be interfered with by the debtor: Thomas's Appeal, 19 P. F. Smith 120, and cognate cases.

"In the view of the auditor this principle does not apply to the case in hand. The auditor finds a judgment in favor of the building association in the sum of $1000. It is the first lien and prima facie entitled to the fund. But the debtor sets up the defence of payment, a defence clearly cognizable by an auditor: Borland's Appeal, 16 P.F. Smith 470. It is immaterial to the building association from which of the two sources, the stock or the judgment, the payment is made to them, if, in point of fact, they realize their debt. And the only objecting creditors, unless the building association can be considered as such, are those who by reason of the position of their several judgments cannot by any possibility take the fund; the whole contention on their behalf being that the fund should be applied to the judgment of the building association so as to free the stock for their benefit. It is urged in support of this position that the association, having two funds to look to, should, in accordance with the equitable rule as to marshalling assets, be compelled to go upon that fund upon which these creditors have only postponed liens, and, in this distribution, liens that as such cannot be reached.

"This argument assumes as its premise the existence of liens upon the stock. Suppose for a moment that no such liens exist. What is there to limit the right of the debtor to have payments on his stock applied to the judgment? If the association had brought suit he could have treated the payments on stock as payments on the debt. In this case the sale having been made upon another judgment, the debtor does what is practically the same thing, viz., appropriates the payments to the judgment. This is no more 'interference with the course of distribution' than is every attempt to let in a junior by establishing the payment of a senior judgment. The building association must of course be paid in full whatever is owing to it; and the other judgment-creditors cannot complain, for the effect of the election is to increase, not to decrease, the fund for distribution. Nor is this in any sense a case for the invocation of the doctrine as to marshalling assets. The three judgment-creditors, apart from their position as *attaching* creditors, have no equity above the other lien-holders who are not reached by the fund. And, moreover, the right to use the stock payments in liquidation of the judgment, does not extend to strangers. 'They,' says AGNEW, Justice, 'can require nothing which the parties do not:' Spring Garden Asso. *v.* Tradesman's Loan Asso., 10 Wright, 493.

"If there be a lien on the stock existing before the election then the holder might with great show of reason claim to confine the association to the fund. Possibly even a demand for subrogation

[Early & Lane's Appeal.]

·would be sufficient to conclude the debtor's right of election. But the auditor is of opinion that until some such step is taken ; until a definite right in, or a lien upon, the stock is obtained, the right of election continues in the debtor up the period of distribution.

" The only question of importance remaining is, whether the attachments of Messrs. Barron & Co., Early & Lane, and O. Howard Blood are operative as against the election of the debtor, Schlesinger. The auditor has already found as matter of fact that the election or appropriation by Schlesinger was made at the first meeting of the audit, November 22d 1877, by a verbal notice from Mr. Strauss, acting for Mr. Brundage, counsel for Schlesinger, and that this notice was repeated in a modified form and in writing by Mr. Brundage on the second meeting of the audit, November 26th 1877.

" The attachments are all tested December 1st 1877. Under the rulings of the auditor, if they be correct, it follows logically that these attachments bound nothing but the interest in the five shares of stock attached, after the application of their value, at the time of the sheriff's sale, to the judgment of the association, or, in other words, the balance, if any, that might exist after the stock had paid the debt."

The court, Harding, P. J., in ruling upon the exceptions to this report, in an opinion, said :

" The important question in this whole case is—did the assignment of the building association stock as collateral divest the title of Schlesinger so far as to prevent sale on execution ? We are of the opinion that such an assignment does divest, for the time being, title in the original owner.

" Where a customer, by indenture, assigned a number of shares in a life insurance company, then standing in the name of the customer on the books of the company, subject to redemption on payment of a sum of money therein mentioned, and with a power of sale, an entry of this assignment was made in the insurance company's ledger, which company afterwards refused to recognise this transfer. It was held that the notice of assignment was sufficient, and that the circumstances sufficiently showed the bankrupt not to be the reputed owner of the shares at the time of bankruptcy : Ex parte Masterman, 2 M. & A. 209 ; Grant on Banking 154.

" So where A. insured the life of B., payable to A. on the death of B., immediately afterward A. assigned the policy to his banker as security for a loan or advance which was also secured by a mortgage of real property. It was held that the company had no right to call upon A. and the bankers to interplead, and the bill was dismissed with costs : Dessborough v. Harris, 3 Eq. Rep. 1058 ; see also Butchart v. Dresser, 10 Hare 453 ; 4 DeG., M. & G. 542 ; Ex parte Dobson, 2 M., D. & DeG. 685.

" The English doctrine here explained is fully sustained in our.

courts. In the case of Hanna v. Holton, 28 P. F. Smith 334, it was held that the assignment of a collateral security to a creditor, to hold for the security of his debt, establishes a privity of contract which invests him with the ownership of the collateral for all purposes of dominion of the debt assigned.

"Where one was indebted to a bank in a sum much larger than the value of some stock of the bank he owned, and it was verbally agreed that he should transfer the stock as collateral security for his indebtedness, and a power of attorney was accordingly drawn up for that purpose, it was held that this agreement operated as an assignment of the stock in equity: Lightner's Appeal, 1 Norris 301. But where a creditor takes a mortgage note, or other chose in action only as security for a pre-existing indebtedness, and not for money advanced at the time, he is not a purchaser for value.: Petrie v. Clark, 11 S. & R. 377 ; Irwin v. Tabb, 17 Id. 419 ; Hartman v. Dowdel, 1 Rawle 282 ; Twelves v. William, 3 Whart. 485 ; Depeau v. Waddington, 6 Id. 220 ; Trotter v. Shippen, 2 Barr 358 ; Ludwig v. Highley, 5 Id. 139 ; Kilpatrick v. Muirhead, 4 Harris 123 ; Ashton's Appeal, 23 P. F. Smith 162.

"It was the duty of the creditors here to have strictly pursued the mode pointed out by the statute when they originally proceeded against the stock held in the name of Schlesinger, notwithstanding it was assigned to the building association as collateral security. There was an equity of redemption in Schlesinger, sleeping, it is true, but nevertheless ready to tap at the conscience of a chancellor sitting in equity at the moment the loan to the association was paid : 1 Purd. Dig. 639, sects. 29, 30, 31 ; Commonwealth v. Watmough, 6 Whart. 117 ; Lex v. Potter, 4 Harris 295 ; Weaver v. Huntingdon Railroad Co. 14 Wright 314.

"The fund in court represents all that Schlesinger's real estate sold for. Here, therefore, is a creditor stripped of all his tangible or valuable property, save only his equity in the stock of the association in question. It is to this fund the jurisdiction of this court has attached. Jurisdiction having attached, equity comprehends within its grasp all incidental matters necessary to enable it to make a full and final distribution, and therefore to terminate litigation while it affords a perfect remedy : Souder's Appeal, 7 P. F. Smith 502 ; Rice's Appeal, 29 Id. 182.

"Subsequent to the assignment of this stock as collateral security, and subsequent to the sale of the same on the Barron & Co. execution, Barron & Co. sued out their execution on the 1st day of December 1877, and attached these five shares of stock according to law. Several other creditors did the same prior to the filing of the report of the auditor in court. How far this estopped these creditors from denying that this stock was yet the property of Schlesinger need not be decided under our present views of this question.

8 NORRIS—27

[Early & Lane's Appeal.]

" We must, therefore, overrule the exceptions in this case and direct the fund in court to be distributed as directed by the auditor.

" Exceptions overruled and report confirmed."

From this decree this appeal was taken, the assignments of error being:

The court erred: 1. In recognising and affirming the jurisdiction of the auditor to inquire into the validity of the sheriff's sale of stock, because an execution cannot be assailed collaterally except in cases of fraud, and an auditor cannot go behind the sheriff's return, which is a part of the record, to inquire into the validity of the sale.  2. In confirming the finding of the auditor that the sheriff's sale conferred no title upon the purchaser.  3. In not awarding the whole of the real estate fund to the association, the first lien-creditor.

*C. D. Foster* and *John McGahren*, for appellants.—The auditor possessed no supervisory power by which he could pass upon and determine the validity of sheriff's sale of stock, upon the principle that an execution, like a judgment, is valid until reversed or set aside: Stewart *v.* Stocker, 13 S. & R. 204; Lowber's Appeal, 8 W. & S. 387; Wilkinson's Appeal, 15 P. F. Smith 190.

And it is settled, if anything can be, that an erroneous judgment or an irregular execution, not void, can be set aside only by direct application to the court from which the process emanates, and not by collateral attack under cover of any other proceeding: Herman on Executions 517; Stewart *v.* Stocker, *supra;* Lowber's Appeal, *supra;* Wilkinson's Appeal, *supra;* Whart. on Ev. 833.

No question can be raised before an auditor regarding an error or irregularity in the judgment or in the issuing of execution: Tr. & H. Pr. vol. 1., p. 1076 and cases cited.

Schlesinger exercised all the acts of ownership and enjoyed all the rights and immunities over the stock after the assignment as collateral security, that he did before.   The assignment made was not an absolute transfer; but it was simply an hypothecation of it for the payment of the loan.   The indices of ownership remained the same after the loan as before.

The association had no greater interest or title to the stock than she would have had if the assignment as collateral had not been made.   The Act of June 16th 1836, Purd. Dig. 635, pl. 12, provides that the sale of stock upon execution shall be subject to all lawful claims thereupon of such body corporate.   The right of the association as against the stock could not be any more affected or prejudiced by a sale of the same on fieri facias in the one instance than in the other.   The manifest object of the act was to protect the rights of the person who was the real but not apparent owner of the stock, and preclude the possibility of having it swept away by execution process for the payment of the apparent owner's debts.

[Early & Lane's Appeal.]

Courts of law, as well as equity, in the distribution of a fund in the hands of the court, invariably apply the equitable principle, that where one creditor has a lien on two funds, and another creditor has a lien on one, only the creditor having the lien on the two funds will be compelled to levy his execution and seek his satisfaction out of that fund upon which he alone has security, so that both creditors may be protected in their rights: Ramsey's Appeal, 2 Watts 228; Bruner's Appeal, 7 W. & S. 269; Findlay v. U. S. Bank, 2 McLean 44; Trimmer v. Bayne, 9 Ves. 209.

*S. J. Strauss*, for appellees.—Assuming that the sale upon the fieri facias conveyed title, it was only the title of the defendant, subject to equities existing against him. The distribution defalked the stock at the request of the defendant, and at its actual value. The auditor had the right and the power to work out the equities of all the parties before him, and to complete the distribution as if the subrogation had been made. This was done in Ramsey's Appeal, 2 Watts 228; Souder's Appeal, 7 P. F. Smith 502; Rice's Appeal, 29 Id. 182.

Stock not standing in the name of the real owner cannot be sold by virtue of a fieri facias: Act 16th June 1836, sects. 32, 33, 34, Pamph. L. 767; Lex v. Potter, 4 Harris 295; Weaver v. Railroad Co., 14 Wright 314.

Such a sale is void. A sale of property in pursuance of any other execution or record than that prescribed by law, vests no title: Herm. on Execution, sec. 258, &c.

The judgment of the Supreme Court was entered, March 31st 1879,

PER CURIAM.—We affirm this decree on the able report of the learned auditor in the court below and the opinion of the learned president confirming it.

> Decree affirmed, and appeal dismissed at the costs of the appellant.