# Economy Building Association to the use of Smyth *versus* Hungerbuehler

1. Where the stock of a building association is assigned as collateral security for a mortgage given to the association, payments on the stock are not *ipso facto* payments on the mortgage.

2. Testimony of the officers of such an association, that they considered the payments as, in law, payments on the mortgage, is not evidence of an appropriation of them to that object.

February 24th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county :* Of January Term 1879, No. 173.

[Economy Building Assoc. v. Hungerbuehler.]

Scire facias by the Economy Building Association, to the use of Denis Smyth, against Frederick Hungerbuehler, on a mortgage executed by defendant to plaintiff, to secure the payment of $2200 one year from date with interest payable monthly, with a proviso that if there should be any default in the payment of interest for the space of six months that then the whole debt should become payable immediately. The writ was duly served on Hungerbuehler, and judgment was taken against him, for want of an appearance, for $2346.37 upon which a levari facias issued. On the petition of Mathias Ruoss the court set aside the levari facias, opened the judgment and let him into a defence. Ruoss then pleaded that the plaintiff ought not to maintain his action, because the $2200 mentioned in the said mortgage were fully paid before the commencement of this suit; that the mortgage was given by defendant to the said plaintiff, as one of the securities on a loan made by the plaintiff to the said Hungerbuehler to secure the repayment of the said loan by the payment of dues, interest and premiums on said loan, on eleven shares of stock, in accordance with the constitution, by-laws, rules and regulations of said association.

At the trial it appeared that on June 2d 1873, defendant was the owner of eleven shares of stock in the plaintiff association, upon which he had paid in monthly dues of $1 per share $803. On the same day he borrowed from the plaintiff, on bond and mortgage $2200, payable in one year with interest at the rate of six per cent. per annum, and in case one month's interest should fall in arrear for six months, the whole principal debt should become due, and assigned his stock to the association as collateral security for the loan. He continued to pay his interest dues on his mortgage, with his monthly premium of $7.15 for his loan, as well also as his monthly dues on his stock till January 10th 1876.

On the 24th of December 1875, Denis Smyth, the use plaintiff, entered a judgment in the Court of Common Pleas, No. 2, of December Term, 1875, against Hungerbuehler for the sum of $1400, and issued an attachment execution thereon against Hungerbuehler as defendant and the building association as garnishee, to which the sheriff made return :

"Attached as within commanded by making known to The Economy Building Association, No. 2, by giving to Jacob Muench, secretary of said association, a true and attested copy of the within writ and making known to him the contents thereof, December 24th 1875, at 4 o'clock 15 minutes P. M., and by giving a like copy to Frederick Hungerbuehler, defendant, and making known to him the contents thereof, December 30th 1875."

On September 20th 1876, on a rule for judgment on answers to interrogatories filed, the court entered judgment as follows: "Rule absolute, and judgment that the garnishees have in their hands eleven shares of the capital stock of the said garnishees, the

Economy Building Association, the property of the defendant, and that the plaintiff have execution against the said shares, subject to all the liens and rights of the said garnishees."

On September 24th 1876, a fi. fa. was issued to levy and sell the stock, and on October 7th 1876, Denis Smyth became the purchaser thereof at sheriff's sale. On the 31st of October 1876, the association having reached the limit of its chartered existence by being able to divide among the stockholders $200 to each share of stock, the board of directors passed a resolution directing the president and secretary of the association to assign unto Denis Smyth the mortgage bond and warrant of attorney given to the association by Hungerbuehler in full payment of the eleven shares of stock purchased by Smyth at the sheriff's sale, upon the payment by Smyth of the sum of $36.57, arrearages of monthly dues on said stock, and the further sum of $36.57, arrearages of interest due the association on said mortgage. Pursuant to this resolution, Smyth paid the several sums of money in the said resolution specified to the association, making thereby each share of stock worth $200, and on the 8th of November 1876, took an assignment of the bond and mortgage from the association in payment of the said stock, and surrendered the same to the association, which afterwards cancelled it. The association ran out in September 1876, and paid to the stockholders on each share of stock held by them $200.

It was admitted Hungerbuehler was at no time six months in arrear in the payment of his dues and interest on his mortgage.

In the interval between the passage of the resolution and the assignment of the mortgage, suit was brought on the mortgage in the name of the Building Association, to the use of Smyth against Hungerbuehler; and, judgment was taken against him for default of appearance, and damages were assessed at $2346.37, and on the same day a levari facias issued to sell the real estate covered by the mortgage. Pending the proceedings on the levari facias, Mathias Ruoss presented his petition to the court, representing that he was a subsequent mortgagee of Hungerbuehler; that the plaintiffs' mortgage was paid; and that, if the plaintiffs should sell the mortgaged property on their writ of levari facias, the lien of the defendants' mortgage would be discharged. On this petition and a rule to show cause, the court opened the judgment, and let Ruoss into a defence, and set aside the levari facias.

Afterwards Ruoss sued out a scire facias on his mortgage, obtained judgment against Hungerbuehler for $1159, and issued a levari facias, and purchased the property at the sheriff's sale for $1300. On the trial of the cause, the plaintiff claimed the full amount of the mortgage debt, with interest due thereon; whilst Mathias Ruoss claimed, that the payments of dues on the stock, were payments on the mortgage; and that the plaintiff was not

[Economy Building Assoc. v. Hungerbuehler.]

entitled to recover for the use of Smyth, any amount beyond what Smyth paid in cash to the association, at the time of the transfer of the mortgage to Smyth, with interest.

The secretary of the association testified: "There is no entry anywhere on our books of the association applying the payment of dues on stock to payments on the mortgage. Our books do not show any such application of dues on stock. My notion is, that, in law, payment of dues on stock is payment on the mortgage. The money of Hungerbuehler we took to pay our debts and expenses, and we credited it in his receipt book."

The court in the charge, inter alia, said: "The question is, whether there was any appropriation of the payments on stock to payments on the mortgage. Mr. Hungerbuehler had the first right to appropriate; if he did not, then the association had the right. * * * I submit the question to the jury whether, from the testimony of Muench, the secretary, there has been an appropriation of stock payments to this mortgage. If the jury find there has been an appropriation of stock payments to the mortgage, Mr. Smyth will be entitled to recover back the money paid the association, on the assignment of the mortgage to him, with interest."

The verdict was for the use plaintiff for $81.75, who took this writ and alleged, inter alia, that the court erred in the above portion of the charge.

*S. N. Rich*, for plaintiff in error.—The court erred in submitting to the jury the question of an appropriation of stock payments to payments on the mortgage, there being no evidence of any specific act of appropriation by either Hungerbuehler or the association, prior to the time of the attachment laid, or even after attachment laid; nor was there any evidence in the cause upon which, at any time, the association could maintain a legal right to appropriate.

The court gave to the declaration of the secretary such controlling effect, as to override all the other testimony in the cause, and to exclude the same from the consideration of the jury; and, in doing so, he ignored the law of attachment as well as the doctrine of subrogation, and misapplied the equitable doctrine of appropriation of payments. This case cannot be distinguished from Spring Garden Association *v.* Tradesmen's Loan Association, 10 Wright 493; North American Building Association *v.* Sutton, 11 Casey 463, and Kreamer *v.* Springville Saving Fund and Loan Association, 36 Leg. Int. 28, in which, it is ruled, that payment of dues on stock are not ipso facto payments on the mortgage.

The court also ignored the question of the time when the pretended application was made. No appropriation could have been made either by or for Hungerbuehler, after the attachment of the stock.

*Thomas Wagner, Jr.*, for the defendant in error.—The question submitted to the jury in the court below was, what was due on the mortgage, which involved the question whether there had been an appropriation of stock payments to the mortgage, which the jury found, and rendered a verdict in favor of the plaintiff below for the balance due upon said mortgage.

The association had a right to appropriate, where the stock had been assigned as collateral security : Spring Garden Association *v.* Tradesmens' Loan Association, 10 Wright 493. Nothing passed to Smyth by the assignment. The association having dissolved before the assignment of the mortgage to Smyth, the payments made by Hungerbuehler, according to the nature of building associations, worked an appropriation, even if there had been none before.

It is doubtful whether, under any circumstances, a building association has the power to assign their mortgages to strangers ; and much more so, after the association has closed up and virtually ceased, and the exercise of which power the defendant contends, is ultra vires.

Mr. Justice GORDON delivered the opinion of the court, May 3d 1880.

Mathias Ruoss who, as terre-tenant, was permitted to defend in this case, was the second mortgagee of Hungerbuehler, the building association having the first mortgage. When Hungerbuehler executed this first mortgage, in amount $2200, he held eleven shares of the company's stock, which he assigned to the association as collateral for the loan embraced by the mortgage. Upon this stock he had paid, in the way of monthly dues, some $803, and subsequently he seems to have met the instalments and interest as they fell due, except about $73, which Smyth paid after the stock fell into his hands. On the 29th of December 1875, Smyth's attachment was served on the building association, as garnishee of Hungerbuehler, and, on the answers made by it, he obtained judgment subject to its equities as pledgee. On this judgment a fi. fa. was issued, a levy made on the stock, and on sale by the sheriff, October 7th 1874, it was bought in by Smyth. As, previously to this time, no application had been made of the stock payments to the mortgage, either by Hungerbuehler or the association, it is clear that Smyth took it freed from all claims of Hungerbuehler or his creditors, and subject alone to the equities of the company.

On the 31st of October 1876, the association having reached the limit of its chartered existence, by being able to divide $200 to each share of its stock, its board of directors passed a resolution authorizing an assignment of the mortgage to Smyth, on his payment of the remaining unpaid dues and interest. This he accordingly did, and received the assignment on the 8th day of November

1876.   In other words, Smyth, the owner of stock worth $2200, assigned it to the company, by which it had been issued, in consideration of the transfer of the mortgage in suit.

Now the defence made by Ruoss is this, that the payments made on the stock were, in law, payments upon the mortgage, and ought so to have been applied.    This view was, in effect, adopted by the court below, and so Smyth was permitted to recover only what he himself had paid to the company to close out the arrears on the stock and interest due on the mortgage.    But this conclusion was based on a false premise, for it is not so that the stock payments were *ipso facto* payments on the mortgage.    The converse has been expressly ruled in the cases of the North American Building Association *v.* Sutton, 11 Casey 463; Spring Garden Assoc. *v.* Tradesmens' Loan Assoc., 10 Wright 493 ; and Early and Lane's Appeal, 8 Norris 411.    Either of the original parties might have made such application before the levy of Smyth's attachment, but this was done by neither of those parties, and so Smyth, by virtue of his attachment, took the place of Hungerbuehler, and as the company might, at Hungerbuehler's instance, had he retained the stock, have paid to him the value thereof, and retained the mortgage, so might it have done with Smyth.    In such case, however, Ruoss could not be heard to complain, for his position as second mortgagee would not be in the least affected thereby.    This stock became collateral security not for his benefit, but for that of the association, hence its surrender would put him in no worse position than he was when his mortgage was executed.    Surely, then, Ruoss could not intervene to prevent the disposition of collaterals in which he had no interest.    In effect this very point is ruled in the case of the Spring Garden Association *v.* Tradesmens' Loan Association, above cited.    It was there held that a purchaser at a sheriff's sale of the mortgaged premises could not compel such application, but that where the building association, on notice of the assignee of the mortgagor, agreed to retain the stock and issue a scire facias on the mortgage, it had the right to recover thereon.    But if the association plaintiff could have paid the value of the stock to Smyth and retained and collected the mortgage, why could it not retain the stock and assign the mortgage?    It certainly would not put Ruoss's mortgage in a worse position, because Smyth held the first lien rather than the company.    Smyth was undoubtedly, by act of law, owner of this stock, which was worth some $2200, and that amount he had the right to demand of the company or its equivalent.    The company, on the other hand, had the right to retain either the stock or the mortgage; it chose to retain the stock, and by assigning the mortgage to Smyth, as in that case it was bound to do, it thereby clothed him with all the rights it would have had had it paid him the value of the collaterals and kept the mortgage.    This,

[Economy Building Assoc. *v.* Hungerbuehler.]

however, was a matter for themselves, a matter with which Ruoss had nothing to do. It is true, had the stock payments been applied to the first mortgage, Ruoss would have been the gainer thereby, but so would he had Hungerbuehler assigned the stock in satisfaction of his mortgage. But as he was powerless to compel the latter, so was he powerless to compel the former. It follows, that under the evidence, as it is now presented to us, there should have been a verdict for the plaintiff for the full amount of the mortgage.

Judgment reversed and a new venire awarded.