John Erthal, President of the Manner Unterstutzungs
Verein Zur Enthracht, No. 2, *v.* Sophia L. Glueck,
Appellant, and the Glenwood Mutual Building and
Loan Association.

*Building association—Paid-up value of stock—Attachment execution.*

There having been an election by a stockholder to appropriate building
association stock to the payment of a mortgage, and an acceptance of an
assignment by the association upon the express trust that it should be so
applied, it follows that instalments paid upon the stock are to be taken as
paid upon the loan and a purchaser at sheriff's sale under a junior judg-
ment takes title subject to the balance unpaid upon the mortgage which is
to be ascertained by allowing credit upon the loan for the value of the stock
which the parties by their agreement have appropriated to its payment.
The value of the stock is not subject to attachment in the hands of the build-
ing association at the instance of another creditor.

*Building association—Mortgage—Applications of instalments on stock.*

Payment of dues upon building association stock does not, ipso facto,
work an extinguishment of so much of the mortgage; the debtor may so
apply it but the payment itself is not an application of the money to the
reduction of the mortgage.   The law does not against the consent of the
debtor apply the instalments paid by him upon his stock to the discharge
of his indebtedness for the money borrowed.   In the absence of an appro-
priation by either party a purchaser at sheriff's sale of the mortgaged
premises cannot compel an application of the collateral security to reduce
the mortgage.

In the absence of evidence of authority in the secretary of a building and
loan association to bind the association by statements as to the amounts
due upon its mortgages, such statements are not binding.   Such authority
is not to be inferred from the nature of the office.

Argued Oct. 7, 1898.   Appeal, No. 63, Oct. T., 1898, by
Sophia L. Glueck, from decree of C. P. No. 1, Phila. Co.,
June T., 1897, No. 548, dismissing defendant's cross-bill and
directing the building association, defendant, to assign and trans-
fer a mortgage upon payment in full to the building association
of the amount of said mortgage.   Before RICE, P. J., ORLADY,
SMITH and W. D. PORTER, JJ.   Reversed.   Opinion by W. D.
PORTER, J.   SMITH, J., dissents.

Hearing on bill and answer and cross-bill and answer.   Before
BRÉGY, J.

The facts sufficiently appear in the opinion of the court.

Decree was entered declaring the mortgage to be a valid and existing incumbrance for the full amount thereof, with interest, fines and costs due thereon, which amount was found to be $1,678.90, and the building association was directed to assign and transfer a mortgage and the accompanying bond to plaintiff upon the payment of $716.26 in cancelation by the plaintiff of seven shares of stock the value of which was found to be $962.64, and that in the event of the failure of the plaintiff to make said payment within thirty days the association should have leave to proceed on the mortgage judgment and execution for the collection of the whole amount due upon said mortgage and to hold the stock as collateral security for the payment of said mortgage until the whole amount thereof should be paid.

The cross-bill was dismissed and it is decreed that Sophia L. Glueck pay all the costs of the proceeding. Sophia L. Glueck, defendant, appealed.

*Error assigned* among others was (8) in ordering and directing the building association to assign and transfer the said mortgage to said John Erthal, upon payment of the sum of $1,678.90, and thereupon the said building association should release any and every claim to the said seven shares of stock, or upon transfer and cancelation by the said John Erthal of the said seven shares of stock, which are now found to be worth the sum of $962.64, and upon payment to the building association by said John Erthal of the sum of $716.26, being the difference between the amount due upon said mortgage and the value of the said stock, that the said building association should assign, transfer, and set over the said mortgage to the said John Erthal absolutely, and should mark the suit now pending upon said mortgage to his use, and that the cross-bill be dismissed.

*J. H. Brinton*, for appellant.—Such an assignment of stock does not constitute a collateral, but a direct, assignment for the payment of the association's loan, and the stock fund is primarily liable. The two assignments bearing even date must be construed as one agreement, and being so construed show that the contracting parties regarded the stock payments as the primary fund. That building association stock may be so assigned

cannot be successfully disputed. Hemperley v. Tyson, 170 Pa. 385, squarely determines this question: York Trust Co. v. Gallatin, 186 Pa. 150.

*Frederick J. Shoyer*, with him *E. O. Michener*, for appellee.— If a member of the loan association fails to exercise his right to apply his payment to a reduction of his mortgage debt, a sheriff's vendee of the mortgaged premises has no right to make such application: Building Association v. Hungerbuehler, 93 Pa. 258.

Where there has been no appropriation by the building association or by the stockholder of payments on the stock to the credit of the mortgage, such payments are not ipso facto payments on account thereof and a purchaser at sheriff's sale of the mortgaged premises is not entitled to a credit for the value of the stock: Link v. Building Association, 89 Pa. 15. See also Wadlinger v. Association, 153 Pa. 622, and York Trust Co. v. Gallatin, 186 Pa. 150.

OPINION BY W. D. PORTER, July 28, 1899:

Joseph Wolf, being the owner of the premises No. 3020 Nevada street, Philadelphia, and a stockholder of the Glenwood Mutual Building and Loan Association, in the month of January, 1889, borrowed of the association the sum of $1,400, for which amount he gave a mortgage upon the Nevada street property and assigned as collateral security seven shares of stock in the association. In transferring the stock to the association he executed contemporaneously two assignments which were delivered to and accepted by the association. One of the assignments (exhibit "B") was filled in on the form printed on the back of the certificate of stock, and simply assigned the stock as collateral security for the payment of the loan. The other assignment (exhibit "A") was attached to the certificate and embodied all the material parts of exhibit "B," but contained in addition this provision, viz: "And in trust that the said The Glenwood Mutual Building and Loan Association, Philadelphia, will appropriate the value of said stock toward the payment of the principal sum of said mortgage debt and for no other intent or purpose whatever." This arrangement was never afterwards changed and Joseph Wolf gave no further directions as to the manner in which the payments upon his stock should be applied.

Joseph Wolf paid the regular instalments of dues, interest and premiums upon the stock and mortgage up to June, 1896.

A judgment for $525 was entered, on January 20, 1893, against Joseph Wolf and in favor of John Jacob Wolf, which became a second incumbrance upon the real estate. On May 9, 1896, John Erthal, president, etc., obtained a judgment against the said Joseph Wolf and others, in the sum of $420.66, which became a third incumbrance upon said property. John Jacob Wolf issued an execution upon his judgment, under which the Nevada street property was duly sold at sheriff's sale, on the 3d day of August, 1896, the purchaser being the said John Jacob Wolf, who, the same day, transferred his bid to Sophia Glueck, one of the defendants, to whom a sheriff's deed was duly executed, acknowledged and delivered, on September 26, 1896. John Erthal, president, etc., issued an execution attachment, upon his judgment against Joseph Wolf, which was served upon the Glenwood Mutual Building and Loan Association as garnishee, on August 1, 1896, and on the 26th of the same month served upon the association a written notice alleging that he had, by virtue of the attachment, a lien on the stock of Wolf which had been assigned to the association, and notifying them to do nothing whereby his lien should be jeopardized, especially to do nothing toward the satisfaction of the mortgage as he intended to prosecute his rights against said stock, and would tender them the amount due on their lien and ask to be subrogated to their rights as mortgagee. The learned judge of the court below who heard this case finds that a judgment was entered against the garnishee, upon its answer, for leave to sell the seven shares of stock, subject to the rights of the garnishee, and that the stock was so sold, upon a writ of fieri facias, and bought by the plaintiff in this proceeding. There is nothing in the abstract of the bill and answer, or evidence, as printed which warrants such finding, but, as no steps were taken by any of the parties which affected the questions now involved prior to the issuing and service of the alias execution attachment, that finding is not material. Before the plaintiff issued this first attachment he had not filed an affidavit and entered a bond, as required by the act of assembly, and he seems to have concluded that it would be safer to start over again. He issued, on March 25, 1897, an alias execution attachment, which was served on the

Building and Loan Association as garnishee on the 26th of March and the same day he served a written notice to the association of his claim to a lien upon the stock and his intention to tender the balance due the association and demand subrogation to its rights as mortgagee. In this execution attachment all the requirements of the act of assembly were observed and the plaintiff obtained judgment for leave to expose the stock for sale, subject to the rights of the association. A writ of fieri facias was issued and the seven shares of stock were sold, on May 24, 1897, to the plaintiff for the sum of $10.00.

Sophia Glueck, upon the assignment to her of the bid of John Jacob Wolf at the sheriff's sale of the real estate, made application to the Land Title and Trust Company for a policy of title insurance on said premises, and the trust company acted as her agent in the settlement and conveyance of the property to her, the said John Jacob Wolf having agreed that the title should be marketable and free from incumbrances. The trust company, on September 25, 1896, sent an agent to the secretary of the Building and Loan Association to ascertain the amount owing upon the mortgage. The secretary furnished a statement showing the amount of the loan, interest, premium and fines, as of October 6, 1896, to be $1,422.77 and the cancelation value of the seven shares of stock to be $834.19 and adding $3.00 for satisfaction fee, left a balance of $591.58 due upon the mortgage. It must be observed that this statement was not correct, unless the value of the stock was to be appropriated in reduction of the loan. The trust company assumed that it was correct, paid the amount of the bid to the sheriff, accepted the sheriff's deed and settled with John Jacob Wolf on that basis. The trust company, on September 28, 1896, delivered to the treasurer of the building association a check payable to the order of the association for the sum of $591.58, but the directors of the association declined to accept the same and the money was returned by the treasurer to the trust company.

The plaintiff, on June 15, 1897, filed this bill in equity, making Sophia Glueck and the Building and Loan Association respondents, reciting the making of the loan to Joseph Wolf, the execution of the mortgage by Wolf, and that the stock had been assigned as a collateral security for the loan, the purchase of the real estate by Sophia Glueck at sheriff's sale and the pur-

chase of the stock by the plaintiff under the proceedings in attachment. He prayed that the mortgage of $1,400 be declared a first incumbrance upon the land for the full amount thereof, and that the association be directed to assign said mortgage and accompanying bond to him, upon being paid the full amount of said mortgage and the lawful moneys due thereon, and upon payment as aforesaid the said seven shares of stock, held as collateral by said association, be released. Sophia Glueck filed an answer. The Building and Loan Association permitted judgment to be entered pro confesso, for want of an answer. Sophia Glueck filed a cross-bill against the Building and Loan Association, to which an answer was filed. The case then proceeded in regular order and the court below, after hearing, entered a decree declaring the mortgage to be a valid and existing incumbrance for the full amount thereof, with interest, fines and costs due thereon, which amount was found to be $1,678.90; the value of the seven shares of stock was found to be $962.64 and the Building and Loan Association was directed to assign and transfer the mortgage and accompanying bond to plaintiff upon payment of $716.26 and cancelation by the plaintiff of the seven shares of stock. It was further decreed that in the event of the failure of the plaintiff to make said payment within thirty days, the association should have leave to proceed on the mortgage to judgment and execution for the collection of the whole amount due upon said mortgage, and to hold the stock as collateral security for the payment of said mortgage debt, until the whole amount thereof should be paid. The cross-bill was dismissed and it was decreed that Sophia Glueck pay all the costs of the proceedings.

Sophia Glueck appealed and now assigns for error certain . findings of fact, the dismissal of the cross-bill and the entry of the decree by the court below. The first three specifications of error refer to the findings, by the court below, of the facts in connection with the statement of the amount owing upon the mortgage, furnished by the secretary of the building association to the agent of the trust company; and the subsequent delivery, by an officer of the trust company to the treasurer of the association, of a check for the balance which the statement set forth to be due. These three specifications are without merit for two reasons. First, while the treasurer of a building association is

usually the proper person to receive money owing to the association, the trust company and its officers had specific notice that the treasurer of this association did not have authority to receive money on this particular class of claims, and the proper officers of the association having declined to ratify the unauthorized act of the treasurer that officer promptly returned the money to the trust company. Second, there was an entire absence of evidence or allegation of authority in the secretary to settle claims due the association, or to bind the association by statements as to amounts due upon its mortgages. There is no such authority implied from the nature of the office, and the only evidence upon the subject in this case was to the effect that such settlements were required to be made by the finance committee. There being no evidence of authority, the admission of the secretary was not binding upon the association: Johnston v. Elizabeth Building and Loan Association, 104 Pa. 394.

The fourth, fifth, sixth and seventh specifications refer to the action of the court in dismissing the cross-bill. The cross-bill relied upon the unauthorized acts of the secretary and treasurer of the association to estop it from proceeding to collect the amount due upon the mortgage, and the prayer was that a decree be entered ordering the association to forthwith satisfy said mortgage of record. As the acts of the officers were without authority and not within the line of their duties, the association was not estopped and the plaintiff in the cross-bill was not entitled to relief thereunder. There was no error in dismissing the cross-bill.

The eighth specification is against the decree entered by the court below, and raises the only substantial question involved in the determination of this appeal, viz : Was Sophia Glueck, the purchaser of the real estate, entitled to have deducted from the mortgage debt the value of the seven shares of stock assigned to the association, by Joseph Wolf, as collateral security for the loan? If she was, then the plaintiff took nothing by his purchase of the stock under his attachment proceedings, and he is not entitled to the relief which he seeks and which was decreed by the court below. The peculiar manner of dealing, with regard to loans, between building and loan associations and their stockholders, led the courts, in the early cases, to hold that the loan was a mere advance of the stock to which the bor-

rower expected to be entitled at the close of the concern ; and
when the instalments or dues upon the stock and the interest
on the advances were fully paid, the loan or advance was paid,
and the borrower could claim only profits on the dissolution of
the association.   Upon this ground it was decided that all stock
payments were, so far as they went, a compliance with the terms
involved in the transaction, and that a purchaser, at sheriff's
sale, of land subject to a building association mortgage was en-
titled to credit for the value of the shares of stock assigned to
the association as collateral security for the mortgage debt: Kup-
fert v. The Guttenberg Building Association, 30 Pa. 465;
Hughes's Appeal, 30 Pa. 471.   The question was presented in
a new form in the case of North American Building Association
v. Sutton, 35 Pa. 463.   Sutton had executed a mortgage to the
association and assigned his stock as collateral security for the
loan.   He defaulted in payment of interest on the loan and a
scire facias was issued upon the mortgage, a plea of payment
with leave was put in, and a verdict and judgment was rendered
in favor of the association which Sutton paid.   Sutton did not
seek to apply the payments on the stock in discharge of the
mortgage and no credit for them was allowed to him on the trial
of the scire facias.   Both parties continued to treat the stock
as still subsisting after the verdict and Sutton paid and the as-
sociation received all fines and dues down to the time when a
transfer of the stock was demanded.   Sutton having demanded
a transfer of the stock, which the association declined to permit,
brought an action to recover the amount which he had paid as
dues upon the stock, and the association defended upon the
ground, that the record of the proceedings upon the scire facias
sur mortgage established conclusively that Sutton recovered
and was allowed, under his plea of payment to the scire facias,
the full value of his stock, that he must be presumed to have
then had credit for all the instalments which he had paid and
that he was consequently estopped from a recovery in an action
for the said instalments.   In support of this position the asso-
ciation relied upon the cases reported in 30 Pa. above recited,
which had been decided subsequently to the entry of judgment
in the scire facias upon the mortgage.   The Supreme Court, in
an opinion by Mr. Justice STRONG, explained the earlier cases
and laid down the rule that payment of dues upon the stock

does not, ipso facto, work an extinguishment of so much of the mortgage; the debtor may so apply it, but the payment itself is not an application of the money to the reduction of the mortgage. The debtor is not compelled to give up his stock, whenever suit is brought upon his bond or mortgage. The law does not, against the consent of the debtor, apply the instalments paid by him upon his stock to the discharge of his indebtedness for the money borrowed. This was the decision reached in Association v. Sutton, and it has not since been questioned. The avowed purpose of these decisions was to protect the borrowing community from the rapacity of money-lending associations, and the result was to clearly establish the right of the debtor to elect the manner in which the payments of dues upon the stock assigned as security for the loan should be applied. The association may apply the payments when, by the terms of the assignment of stock, a discretion to make the application is delegated to it. But in order to effectuate the application of payments on the stock to the debt, it requires an act of appropriation by one or other of the parties. In the absence of an appropriation by either party, a purchaser at sheriff's sale of the mortgaged premises cannot compel an application of the collateral security to reduce the mortgage: Spring Garden Association v. Tradesmen's Loan Association, 46 Pa. 493; Economy Building Association v. Hungerbuehler, 93 Pa. 258. If before there has been an appropriation of the payments, the stock is attached, at suit of a creditor of the borrower, and sold the purchaser succeeds to the rights of the borrower and may require the association to exhaust the mortgage security before resorting to the stock, or he may, upon surrender of the stock and payment of the difference between its value and the amount of the mortgage debt, demand subrogation to the rights of the association under the mortgage. If an appropriation has been made before the stock becomes bound by the attachment, then the attachment binds nothing but the balance, if any, that remains after the stock has paid the debt: Economy Building Association v. Hungerbuehler, supra; Early and Lane's Appeal, 89 Pa. 411.

The contest in this case is between a creditor of the borrower, who attached and sold the stock, and a purchaser at sheriff's sale, upon a junior judgment, of the real estate upon which the mortgage remains a lien. The amount of the mort-

gage debt exceeds the value of the stock, and if the stock is to be applied to the payment of the debt the attaching creditor took nothing. The case must turn upon this question, Was there an application of the payment upon the stock to the debt secured by the mortgage before the stock became bound by the attachment? Nothing was done, by either of the parties, after the original assignment of the stock as collateral security which could be construed as an act of appropriation. The rights of these litigants are, therefore, fixed by the terms of the assignments executed by Wolf and accepted by the association. Unless in those instruments, which evidence the agreement of the parties upon which the whole transaction was founded, there was an appropriation of the stock to the payment of the debt secured by the mortgage the decree entered by the court below was free from error.

It is not necessary to enter into speculation and refinement as to which one of the papers, exhibit "A" or exhibit "B," constituted the real contract between the parties, as both can stand together we are not free to disregard either. Exhibit "B" was the printed form on the back of the certificate, with its blank spaces filled in and signed, and it carried notice to all persons into whose hands the certificate of stock might come. It was an assignment of the stock as collateral security for the loan, but it contained no stipulation as to the manner in which the value of the stock should be appropriated. We must assume that the parties had some purpose in contemporaneously executing the assignment exhibit "A" and attaching it to the certificate. The legal effect of the papers, respectively, is the same save in this respect, exhibit "A" contains the provision: "And in trust that the said The Glenwood Mutual Building and Loan Association, Philadelphia, will appropriate the value of said stock toward the payment of the principal sum of said mortgage debt and for no other intent or purpose whatever," which is not found in exhibit "B." There is no conflict between the agreements, for exhibit "B" left Wolf free to appropriate the stock to payment of the mortgage debt, and it was competent for the parties to make a supplemental agreement as to the appropriation of the payments upon the stock. This supplemental agreement was entered into and embodied in exhibit "A." The whole agreement of the parties was evidenced

by the two assignments taken together. The stock was assigned as security for the loan. Wolf elected to appropriate the value of the stock to payment of the mortgage debt and the association accepted the stock upon the express trust that it should be so applied. This was an agreement mutually binding upon the parties, and was manifestly intended to operate as an express appropriation, and not a direction to appropriate: Chase v. Bank, 66 Pa. 169.

The election by Wolf shows that it was his purpose to make the stock fund primarily liable for the loan, and the acceptance by the association of the assignment, subject to the election, involved an agreement on its part to so regard it. The application of the payments having been thus explicitly agreed upon at the inception of the contract, the instalments paid upon the stock are to be taken as paid upon the loan: Hemperley v. Tyson et al., 170 Pa. 385; York Trust v. John D. Gallatin, 186 Pa. 150. Sophia L. Glueck the purchaser at sheriff's sale took title to the land subject to the balance unpaid upon the mortgage, which was to be ascertained by allowing credit upon the loan for the value of the stock which the parties by their agreement had appropriated to its payment. The court below held that the payments upon the stock were not to be applied in reduction of the mortgage debt, and decreed accordingly; in this the learned court erred. The eighth assignment of error is sustained.

We have nothing in the evidence as printed from which we can determine the value of the stock, nor the amount of the mortgage with its unpaid interest, but it is conceded that the value of the stock is less than the amount due upon the mortgage. The plaintiff was, therefore, entitled to nothing and his bill must be dismissed. Under the record and evidence here presented we must also dismiss the cross-bill, without prejudice to the right of Sophia Glueck to have the value of the seven shares of stock, held by the association as collateral security, credited upon the mortgage debt, in any proceeding upon the mortgage. Decree reversed.

And now, July 28, 1899, it is ordered and decreed that plaintiff's bill be dismissed; that the cross-bill be dismissed, without prejudice to the right of Sophia Glueck to have credit for the value of the seven shares of stock of the Glenwood Mutual Build-

ing and Loan Association, held by the association under the assignment from Joseph Wolf, upon the mortgage which is a lien upon her land. And it is ordered that the appellee, John Erthal, president, etc., pay the costs in the court below and upon this appeal.

SMITH, J., dissents.