J. M. Hemperley, Appellant, *v.* Anna Tyson, Defendant, and The Serial Building and Loan Association of Mahanoy City, Garnishee.

*Building association—Assignment of stock—Attachment execution—Marshaling assets—Equity.*

Where a member of a building association borrows money from the association, and to secure the loan gives a mortgage on his real estate, and makes an assignment of his stock, in which he elects to appropriate the amount realized from the stock at its maturity in payment of the loan, an attachment creditor whose attachment is subsequent to the mortgage and assignment cannot compel the association to exhaust the security furnished by the mortgage before resorting to the security afforded by the assignment.

*Subrogation—Notice—Equity—Attachment execution—Building association.*

Where a loan by a building association is secured by a mortgage and an assignment of the stock of the association, and a subsequent attaching creditor desires to enforce any equity which he may have to subrogation to the rights of the mortgagee, he must notify the association of his equity, and of his intention to enforce it, and caution the association to do no act by which his security may be diminished.

Where the attaching creditor procures a sale of the real estate subject to the mortgage, but secures nothing therefrom towards payment of his debt, and gives no notice to the association of his purpose to compel it to resort in the first instance to the real estate for the payment of its claim, or in the event of its refusing to do so to demand subrogation to its rights as mortgagee, he cannot complain of the appropriation of the amount realized on the stock to the payment of the loan, nor of the cancellation of the mortgage.

*Building association—Mortgage—Sheriff's sale—Notice—Estoppel.*

Where a loan by a building association is secured by a mortgage and an assignment of the association's stock, the assignment containing an election on the part of the assignor to appropriate the amount realized from the stock at its maturity in payment of the loan, a subsequent attaching creditor who procures a sale of the real estate under his judgment, cannot complain of a notice given by the association at the sheriff's sale that purchasers would take the property subject to the association's mortgage.

Argued Feb. 18, 1895. Appeal No. 17, July T., 1894, by plaintiff, from judgment of C. P. Schuylkill Co., Jan. T., 1888, No. 95, on verdict for defendant. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Attachment execution.    Before BECHTEL, J.

At the trial it appeared that in January, 1883, Mrs. Anna Tyson obtained from the Serial Building and Loan Association of Mahanoy City, the garnishee, seven loans of $200 each on seven shares of the stock of the association, series one giving bond and mortgage to the association in the sum of $1,730 to secure the payment of the loan, together with the premium bid for obtaining them, and on the same day and at the time assigned the seven shares of stock to the association as security for the loans.    On November 21, 1887, the plaintiff, Hemperley, recovered a judgment against Mrs. Tyson for $457.83 and issued attachment execution November 30, 1887, and summoned the building association as garnishee.    The real estate of defendant was sold in March, 1888, on an execution issued under plaintiff's judgment.    At the sale T. H. B. Lyon, Esq., notified the intending purchasers that whoever bought the property bought it subject to the mortgage.

The evidence in the case showed that default was not at any period made for six months in payment of the monthly installments due on the seven shares of stock, nor in payment of the monthly installments of premium, until the shares were worth $200 each, and that the stock of the series matured in the fall of 1892.    The evidence in the case further showed that when the stock matured it was applied in payment of the mortgage debt and the mortgage was satisfied.    The nineteenth article of the by-laws of the association was as follows: " When the shares of stock of any series upon which loans shall have been granted shall reach the matured value of $200 each, such value shall be credited to the account of such loanholders, when the loan shall be declared fully paid and satisfied, and the stock shall be canceled and shall revert back to this corporation."

The assignment of the stock made by Mrs. Tyson to the association when she obtained the loans was in the following language: " Know all men by these presents that I, Anna Tyson, have assigned, transferred and set over and by these presents do assign, transfer and set over unto the The Serial Building and Loan Association of Mahanoy City, all my right, title and interest in one share of stock of said association as per certificate No. ——, Series One, in trust that said association shall have and hold the same as collateral security for the pay-

ment of a certain debt of 1730 dollars, for which I have this day executed to them bond and mortgage; the amount *realized* from said stock to be appropriated toward the payment of any amount in which I may be indebted to said association either on account of the principal of said debt, interest, premiums or fines for which I am now or may hereafter become responsible to said association."

John Latham was called by defendant and asked whether or not the shares at their maturity were applied in payment of the mortgage, and the mortgage canceled. To this plaintiff objected that it made no difference in the issue trying whether the stock was appropriated at maturity or not, the question being whether Mrs. Tyson had any interest in this stock at the time it was attached; and the testimony of appropriation subsequent to the attachment was irrelevant, immaterial and incompetent.

The objection was overruled, evidence admitted and bill sealed.

The witness, in reply to the question, then stated that the shares at their maturity were applied in payment of the mortgage, and the mortgage canceled in pursuance of the by-laws of the association, and that no proceedings were ever had on the bond and mortgage. [1]

The court charged in part as follows:

"J. M. Hemperley is the plaintiff in this case. Anna Tyson is the defendant, and the Serial Building and Loan Association has been summoned here as garnishee. This proceeding was instituted to No. 95 January term, 1888, and the object of this proceeding, which is known as an attachment execution, is for the plaintiff to seize certain stock that Anna Tyson at one time held in the Building Association, and apply that stock to the payment of this debt. [Anna Tyson is not here to make any objection to this proceeding one way or the other so far as anything has appeared in this case;] [2] but the saving fund has answered this proceeding in such a way as to create the issue that is now presented to the court and jury, and the saving fund says that Anna Tyson had no stock which she could have called upon it to deliver or pay at the time this attachment execution issued, for the reason that it claims that the stock had been delivered to it; that she had borrowed the money out of the saving fund, and handed over her stock to secure payment

of it, and that therefore when Hemperley, the plaintiff in this case, proceeded with this attachment execution, he took whatever he would get out of it, subject to the rights of the saving fund, it having years previous to the time of the issuing of his attachment obtained an assignment of the stock, and that assignment accompanied by the delivery of the possession of the stock to the saving fund, to secure the payment of their mortgage. . . .

" The nineteenth article of the by-laws of the association . . . . provides that when the stock gets to be worth $200 in the case of a person who has borrowed money on his stock from the saving fund, that the stock shall be applied to the payment of the money borrowed, and it shall revert to the corporation.

" [Our judgment in relation to that article in the by-laws is that it made this stock the primary fund for the payment of the mortgage and one to which the saving fund should first resort to pay itself back the money it had loaned to Anna Tyson ;] [3] but in addition to this the shareholder, Anna Tyson, on the 3d of January, 1883, executed an assignment of this stock to the association. The important part of this assignment follows in this language, ' The amount realized from said stock to be appropriated toward the payment of any amount in which I may be indebted to said association either on account of the principal of said debt, interest, premiums, or fines for which I now am or may hereafter become responsible to said association.'

" [As I understand this language she then and there agreed in 1883 when she borrowed this money from the saving fund and transferred this stock to the saving fund that it should be so appropriated to the payment of the mortgage. We think it is self-evident that the association not only had the right to apply whatever might become necessary of the proceeds of said stock to the payment of the mortgage,] [4] but that it is at least doubtful whether under the assignment of by-laws it was not required to so apply the proceeds of the stock. The language of the assignment would seem to require this. ' The amount realized from said stock to be appropriated toward the payment of any amount ' would seem to warrant this conclusion. Certain it would seem to be that as against Anna Tyson it possesses the right to so appropriate the funds arising from

said stock both under the assignment and the by-law above mentioned. . . .

" She had no equity by virtue of the same that would require the association to first proceed against the land and then pay over to her the value of the stock at its maturity. When the stock matured the association held the money in its own hands, and was not required to hand it over to her and then to collect the amount of the mortgage out of the land, and forsooth, take the chances of whether it would not thereby be required to buy and hold the mortgage premises.

" The plaintiff here is J. M. Hemperley, who is the attaching execution creditor. The plaintiff's right is by virtue of his attachment execution issued to No. 95, January term, 1888. It is well settled than an attaching creditor stands exactly in the shoes of his debtor, and any equities that could be set up against the latter are equally available against the former. That the attaching creditor has no other or greater right than his debtor is apparent from a number of cases, among them may be mentioned, Patten v. Wilson, 34 Pa. 299 ; Bank's App., 123 Pa. 473.

" The mortgage was never proceeded upon by the association, and no fund ever arose from any sale upon either the bond or mortgage. If under these circumstances the attaching creditor can claim that moneys realized upon the stock cannot be applied to the payment of anything accruing on the mortgage after the attachment was served, or that the amount realized upon the stock at the time of its maturity in August, 1892, could not be applied to the payment of the amount that is due upon the mortgage, then the plaintiff, by virtue of his attachment, nullifies and absolutely sets aside the assignment made to the saving fund, and the stock delivered to the saving fund in pursuance thereof five years before his writ issued. So that you may understand that, I will make an explanation in relation to it. That as the assignment occurred in 1883 by Anna Tyson to the saving fund, the attaching creditor comes with his attachment five years after that, in 1888, and seeks to set aside the assignment and say to the saving fund, you must deliver this stock over to me, or you must pay to me the value of this stock, and you must go and look to the land for the amount of your mortgage. We say we do not believe that can be done because

the land might or might not be worth the amount of the mort-
gage.    The party might be compelled to buy the land and hold
it for years until he could realize the money, and we think the
saving fund was not required to do that.    It had a right to
hold this stock when it was given to them five years before
that attachment execution issued at all.    We cannot believe
that such is the effect of the attachment, [but we believe that
the assignment itself is an election, as of its date and delivery,
on the part of the shareholder to appropriate the stock to the
payment of any amount due upon the mortgage, and conse-
quently vested such right in the fund as cannot be divested by
the attachment.] [5]

"In addition to this question there is a question presented
here on what is termed in law the doctrine of estoppel.    A man
sometimes may make statements in the presence of another that
leads such other to do some act that he would not do but for
those statements, and then it turns out the statement was not
correct, and when such is the case he is estopped from assert-
ing the truth, and this is called the doctrine of estoppel.    The
attempt as we understand the doctrine of estoppel to apply that
doctrine in this case we think is not warranted by the authori-
ties.    Here it is said that when the sheriff's sale occurred in
1888 by which the land that was in the agreement was sold
(but not sold by the mortgage, it was sold by some other judg-
ment against this party) ; that Mr. Lyon, who was the solicitor
for the association, appeared at the sale, and he said at the sale,
when he was asked the amount of the saving fund claim, the
amount of the claim was $1,730, which was the whole amount
of the mortgage.

"In the first place there is no evidence here whatever that
that was not the amount that was due on the mortgage at that
time, because the stock had not been applied to its payment, for
the reason as we understand the parties that the stock had not
yet matured ; it had not reached its matured value of $200 a
share and could not be applied unless there was some default
made of which there is no evidence in this case.    Therefore in
point of fact the mortgage was the amount of the claim at that
time in 1888, but in August, 1892, the stock reached its ma-
turity, two hundred dollars a share, and then the saving fund
under the assignment and under the by-laws according to the

evidence here applied the stock to pay the mortgage, and the assignment authorized them to do that. Anna Tyson had no right to object to it, and this attaching creditor has got no greater right than Anna Tyson, but stands in the same situation."

The court negatived plaintiff's third point, which was as follows :

" 3d. If the jury believe that at the sale of the property of Mrs. Tyson, the defendant, bound by the mortgage of the Serial Building and Loan Association, through the attorney of the said garnishee, declared that the said property would be sold subject to the whole amount of said mortgage and interest, to wit, $1,730, then the said garnishee was thereafter estopped from applying the stock payments to the reduction of the said mortgage." [6]

Verdict and judgment for defendant.  Plaintiff appealed.

*Errors assigned* were among others, (1) ruling on evidence, quoting the bill of exceptions ; (2–6) above instructions, quoting them.

*George J. Wadlinger,* for appellant.—As between the fund and the borrower it could make no difference whether the borrower first paid the loan and then recovered the value of the matured stock, or whether or not the one was set off against the other : Harris' App., 18 W. N. C. 14.

A member who has assigned his shares of stock in the association to a third party as collateral security for a debt cannot, when sued upon his mortgage to the association, claim a credit for the value of such shares of stock: Shober v. Saving Fund, 35 Pa. 223.

Where the stock of a building association is assigned as collateral security for the payment of a mortgage or judgment given to the association, payments on the stock are not ipso facto payments on the mortgage or judgment : Economy Building Assn. v. Hungerbuehler, 93 Pa. 258 ; Spring Garden Assn. v. Tradesmen's Assn., 46 Pa. 493 ; Link v. Germantown Building Assn., 89 Pa. 19.

The appropriation of stock is a certain specific act; it is not a matter of intention or a mere conclusion.

Had the attachment issued before the election of appropriation, the result would have been different: Harris' App., 18 W. N. C. 14; Central Assn. v. Schmitt, 12 W. N. C. 239.

Sight must not be lost of the fact that a third person's equities, if not absolute right under the law, form an element in this case. The assets of Anna Tyson should have been so marshalled that both the Serial Building and Loan Association and Hemperley could have worked out their rights: Endlich v. Building Asso., § 461, p. 464; 1 Story, Eq. Jur. § 633; Ex parte Kendall, 17 Ves. 514; Blank v. Eichelberger's Appeal, 6 W. N. C. 25; Ziegler v. Long, 2 Watts. 205 (see opinion, SERGEANT, J.); Bruner's Appeal, 7 W. & S. 269; Del. & Hudson Canal Co.'s App., 38 Pa. 512; Hasting's Case, 10 Watts 303; Neff's Appeal, 9 W. & S. 36; Shunk's Appeal, 2 Pa. 304; McDevitt & Hay's Appeal, 70 Pa. 373; Horning's Appeal, 90 Pa. 388; Ramsey's App., 2 Watts, 228; Endlich on Building Associations, sec. 446; Longwell v. Hartwell, 164 Pa. 533; Nat. Bank of Chester v. Speakman, 1 Chest. Co. R. 124; Middleton v. Norcross, 39 Leg. Int. 90.

The court erred in what it said in its general charge on the doctrine of estoppel. Mr. Lyon as attorney for the Building Association had the power by virtue of his employment to give such notice at the sheriff's sale: Hiestand v. Williamson, 128 Pa. 122; Schroeder, 1 Wood, 290; Seyberts' Assignment, 5 Kulp, 172; Hustin v. Mitchell, 14 S. & R. 307; Sargeant v. Clark, 108 Pa. 588; Wilson v. Young, 9 Pa. 101; Bingham v. Guthrie, 19 Pa. 418; Babb v. Stromberg, 14 Pa. 397; Rowland v. Slate, 58 Pa. 196; Evars v. Kamphaus, 59 Pa. 379.

Silence where it is the duty to speak may work an estoppel: Rice v. Dewy, 54 Barbour, 455; Woods v. Wilson, 37 Pa. 379; Hill v. Epley, 31 Pa. 331; Logan v. Gardner, 135 Pa. 600; Chapman v. Chapman, 59 Pa. 214; Wahl v. Pittsburg & West Ry., 158 Pa. 257; 7 Ency. of Law, pages 12, 13.

Positive acts of encouragement, or which help mislead, will raise an estoppel: Buchanan v. Moore, 13 S. & R. 303; Robinson v. Justice, 2 P. & W. 19; Putnam v. Tyler, 117 Pa. 570; Miller's App., 84 Pa. 391; Erwin v. Lowry, 7 Howard, 172; Kirk v. Hamilton, 102 U. S. 68; Close v. Cemetery, 107 U. S. 466; Carr v. Wallace, 7 Watts, 394.

*T. H. B. Lyon*, for appellee.—An attaching creditor stands in the shoes of the debtor, and any equities that could be set up against the latter are equally available against the former: Patten v. Wilson, 34 Pa. 299; Strong v. Bass, 35 Pa. 333; Fessler v. Ellis, 40 Pa. 248; Dougherty v. Hunter, 54 Pa. 380; Fourth Nat. Bank et al. App., 123 Pa. 473.

The contract which Mrs. Tyson made with the association in order to get the money loaned to her could not be annulled or impaired, either by her or by any third party.

Payments on stock are not ipso facto payments on the mortgage debt, but the mortgagor may so apply it, or the association, the mortgagor having the first right to so appropriate stock payments, and on his failure so to do the association may then exercise its right of appropriation: North American Building Assn. v. Sutton, 35 Pa. 463; Spring Garden Assn. v. Tradesmen's Association, 46 Pa. 493: Economy Association v. Hungerbechler, 93 Pa. 258; Early & Lane's App., 89 Pa. 411.

The plaintiff, Hemperley, was in the same situation as any creditor holding a junior judgment against his debtor where the first incumbrance is in process of being gradually liquidated, and the security is not sufficient for both debts.

OPINION BY MR. JUSTICE MCCOLLUM, October 7, 1895:

Anna Tyson borrowed $1,400 of the Serial Building and Loan Association of Mahanoy City, Pa., on the third of January, 1883, and to secure the payment of the same she gave to the lender a mortgage on her real estate and an assignment of seven shares of its stock. Hemperley recovered a judgment against her on the twenty-first of November, 1887, and nine days thereafter issued process upon it, on which he attached the assigned stock and summoned the association as garnishee. His judgment was a lien on the real estate covered by the mortgage, and by virtue of other process issued thereon he sold the former, subject to the latter. He acquired nothing by his sale, as the proceeds of it were insufficient to satisfy the prior judgment liens. In 1892 the stock matured, and the association, in compliance with the direction contained in the assignment of it, appropriated the amount realized from it in satisfaction of the mortgage debt. The association having entered the plea of nulla bona in the attachment proceeding, a trial was had on the issue so made,

which by direction of the court resulted in a verdict for the defendant. From the judgment entered on the verdict this appeal was taken. The appellant's contention is that by his attachment he acquired a lien on the stock, which ipso facto cast on the association the duty of exhausting the security furnished by the mortgage, before resorting to the security afforded by the assignment, and further, that if the association was not bound to exhaust the mortgage security first, it was estopped by what occurred at his sale of the real estate, from appropriating so much of the stock fund as was necessary to satisfy his claim. The first obstacle that we notice in the path of this contention appears in the assignment. It is the election by the assignor to appropriate the amount realized from the stock, at its maturity, in payment of the association's loan to her. This election shows that it was her purpose to make the stock fund primarily liable for the loan, and the acceptance by the association of the assignment subject to the election, involved an agreement on its part to so regard it. The subsequent action of the association was therefore in strict accordance with the mutual purpose and understanding of the parties to the transaction, and with the nineteenth article of the by-laws of the association. The rights of the association under and by virtue of this election were not taken away or qualified by the attachment, but the latter was subject to them: In Early & Lane's App., 89 Pa. 411, it was expressly decided that the rights of the attaching creditor were subject to the prior election of the shareholder in regard to the appropriation of the stock payments, and this appears to be conclusive against the appellant's contention respecting the effect of the lien acquired by the attachment. In the case before us the borrower, after her election, could not compel the lender to sell her real estate before resorting to the stock fund for payment of the loan, nor could her creditor do so. Whether the latter had an equity arising from his lien which would have entitled him to subrogation to the rights of the mortgagee if he had taken timely and proper measures to enforce it, is a question we need not consider, because there is nothing on the record which raises it. If he had such an equity, and it was his intention to enforce it, his plain duty was to notify the association of both, and to caution it " to do no act by which his security might be diminished: " Taylor's Exrs.

v. Maris, 5 Rawle, 51, and McIlvain v. Mutual Assurance Co., 93 Pa. 30. Neither the lien of his judgment nor the lien of his attachment was such notice, or dispensed with it. As the appellant gave no notice or hint to the association of his purpose to compel it to resort in the first instance to the real estate for payment of its claim, or in the event of its refusal to do so, to demand subrogation to its rights as mortgagee, he cannot justly complain of the payment of the loan from the amount realized on the stock, or of the cancellation of the mortgage. He had a lien on the real estate and a lien on the stock, but the lien upon the former was subject to the mortgage, and the lien upon the latter was subject to the assignment held by the association. If he had maintained his liens until the stock matured, the cancellation of the mortgage would have enabled him to obtain satisfaction of his claim out of the real estate, provided the same was of sufficient value to pay it and the prior judgment liens. But he voluntarily destroyed his lien on the land and surrendered the equities arising from it. Why he did so does not distinctly appear nor is it necessary to inquire.

Was the association estopped from exercising its right of appropriation under the assignment by anything that Lyon said at the sale of the real estate on the appellant's judgment? In answering this question we must not overlook the fact that the time for the payment of the loan was at the maturity of the stock, and that when the real estate was sold the mortgage was a valid lien upon it for the whole debt. The statement which Lyon is alleged to have made at the sale was therefore in harmony with the facts and the legal rights of the association. It was in no sense a misrepresentation, or inconsistent with the claim of the association under the election of its assignor. It was made three months after the attachment proceedings were instituted, and there was nothing in it which rendered necessary or furnished good reason for a sale of the real estate upon the appellant's judgment at that time. According to his own showing he knew the value of the stock and how it was held, and that he could realize nothing on his judgment by the sale. Our conclusion is that the association was not estopped by the statement we have considered from exercising its contract rights. The case was correctly tried in the court below, and the charge of the learned judge amply justified the judgment entered there.

Judgment affirmed.