York Trust, Real Estate & Deposit Company, Receiver of the Anchor Building & Loan Association, *v.* John D. Gallatin, Appellant.

*Building and loan association—Loans—Appropriation of payments.*

A borrower from a building and loan association who has deposited his stock as collateral for the loan may, before the intervention of the rights of creditors, direct appropriation of his payments on the stock to the extinguishment of the debt, and where the appropriation is made at the inception of the contract of loan, it cannot thereafter be successfully questioned.

The by-laws of a building and loan association provided that the security for a loan " shall be real estate, or by the borrowing member assigning his share or shares of stock to the association in pledge." The bond for the loan contained a covenant by the borrower that all money paid by him into the association on the stock held by him "shall be taken and

considered as payment on and in liquidation of this bond." *Held*, that the covenant in the bond operated as an express appropriation of, and not as a direction to appropriate, payments on stock to the extinguishment of the loan.

Argued May 20, 1897. Reargued Feb. 16, 1898. Appeal, No. 56, Jan. T., 1897, by defendant, from judgment of C. P. York Co., Aug. T., 1896, No. 78, on case stated. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed. FELL, J., dissents.

Case stated on amicable scire facias to revive judgment.

The case stated was as follows :

First: The defendant, on September 26, 1890, subscribed for twenty-five shares of the capital stock of the 15th series of the Anchor Building & Loan Association, of the par value of $105 each. Said association has been duly incorporated according to law, as a building and loan association.

Second: On October 10, 1890, the defendant borrowed from said association his said twenty-five shares of stock, and received from the association on said loan $2,500, being the amount of the par value of his said stock less $5.00 per share premium, which premium amounting to $125, the association retained.

Third: In accordance with the by-laws of the said association, and as the security required thereby, the defendant made, executed and delivered to said association, and the said association accepted his judgment bond in the sum of $2,625, on which the above entitled judgment was entered ; said bond and warrant of attorney, or a copy thereof are hereto attached and made part of this case stated. Said bond being in the form provided by said association and required of its borrowers.

Fourth: The defendant paid the said association $6.25 per week, being the amount of weekly dues on his said stock, from the date of his said subscription, September 26, 1890, to the date of the said loan, October 10, 1890 ; and from the latter date to and including January 17, 1896, the defendant has paid into the said association weekly the sum of $6.25, as weekly dues on his said stock, and the further sum of $3.75 weekly, as interest on said loan. The total amounts so paid in by him are for weekly dues $1,737.50, and for interest $1,031.25.

Fifth : The defendant was ready, able and willing to continue

said payments according to the terms and conditions of his said bond, but when he called on Henry Boll, the clerk of said association, to make the next payment due after January 17, 1896, he was informed by said Henry Boll that said association had ceased to do business and to receive payments, and that he, said Henry Boll, clerk as aforesaid, was not authorized to receive the payment then due.

Sixth: At or before January 17, 1896, the commonwealth's banking commissioner sent an examiner to investigate the affairs of the said association, and on February 10, 1896, on the report of said examiner, the said banking commissioner appointed the York Trust, Real Estate & Deposit Company temporary receiver of said association; and on February 19, 1896, on bill or information filed by the attorney general of the commonwealth of Pennsylvania, the court of common pleas of Dauphin county adjudged the said association to be insolvent, and decreed its dissolution, and appointed the above named, the York Trust, Real Estate & Deposit Company permanent receiver thereof.

Seventh: By reason of the above state of facts, the defendant was unable, though ready and willing, to continue his weekly payments.

Eighth: The book of the defendant, containing a copy of the by-laws of the association and the record of his payments to said association, as above set forth, is hereby made part of this case stated.

Ninth: At the time of the decree of the court of common pleas of Dauphin county, referred to in paragraph 6, of this case stated, the proper officers of the association had not valued each share of stock in the 15th series at the sum of $105.

1. If the court shall be of opinion that the defendant is entitled to credit on his said judgment for the money, to wit: $1,737.50, and $1,031.25, so as aforesaid paid by him, then judgment to be entered in favor of the plaintiff and against the defendant for $518.75, with interest from January 17, 1896.

2. If the court shall be of opinion that the defendant is entitled to credit on his said judgment for said sums of money, and that the same should be treated as partial payments with weekly rests, and interest calculated accordingly, then judgment to be entered in favor of the plaintiff and against the defendant for $180.27, with interest from January 17, 1896.

3. If the court shall be of opinion that the defendant is not entitled to credit on his said judgment for said weekly payments of dues so made by him as aforesaid, amounting to $1,737.50, then judgment to be entered for plaintiff and against the defendant for $2,256.25, with interest from January 17, 1896, being the amount he actually obtained from the association ($2,500), with legal interest at six per cent less the amount paid in by him as interest ($1,031.25).

Costs of suit to follow final judgment.

The right of appeal by either party is reserved.

### COPY OF BOND.

" Know all Men by these Presents,

" That I, John D. Gallatin, of the township of Manchester, of the county of York and state of Pennsylvania, am held and firmly bound unto the Anchor Building and Loan Association, of York, county of York, and state of Pennsylvania, in the sum of twenty-six hundred and twenty-five dollars, lawful money of the United States of America, to be paid to the said Anchor Building and Loan Association, its certain attorney, successors or assigns ; which payment well and truly to be made I do bind myself, my heirs, executors, administrators, and every of them, firmly by these presents. Sealed with my seal, dated the tenth day of October, in the year of our Lord, one thousand eight hundred and ninety.

" Now the condition of this obligation is such, that if the above bounden John D. Gallatin, his heirs, executors and administrators, or any of them, shall and do well and truly pay or cause to be paid, unto the above named, the said Anchor Building and Loan Association, its certain attorney, successor, or assigns, the just sum of ten dollars on Friday of each and every week hereafter, until all the members of the fifteenth series of said association shall have received the full amount of all their stock from the said association, (the sum of ten dollars being the amount of weekly dues and interest on twenty-five shares of the capital stock of said association, loaned by the same to the said John D. Gallatin, in accordance with the constitution and by-laws thereof,) without any fraud or further delay, then the above obligation to be void, or else to be and remain in full force and virtue. Provided, however, and it is hereby expressly agreed, that if at any time default be made in

the payment of said weekly dues and interest when due, for the space of six months after any payment thereof shall fall due, then and in such case the said principal sum of twenty-six hundred and twenty-five dollars shall immediately thereupon become due, payable and recoverable, and payment of said sum of twenty-six hundred and twenty-five dollars and all dues, interests and fines accrued on said twenty-five shares of stock under and by virtue of the constitution and by-laws of said association, together with five per cent commission for attorney's fees, may be enforced and recovered at once, anything hereinbefore contained to the contrary thereof notwithstanding. And further, I, the above named John D. Gallatin, do hereby expressly agree that all money heretofore paid or hereafter to be paid by me into the said association on the stock I now hold in the same shall be taken and considered as payments on and in liquidation of this bond. And further, I, the above named John D. Gallatin, do hereby expressly agree to waive all benefit of exemption of any of my property, real or personal, from levy and sale on any execution hereon, and agree not to claim any benefit of the act of assembly approved April 9th, 1849, or under and by virtue of any exemption law which may be hereafter passed, and release of all errors, and without stay of execution, and inquisition and extension upon any levy on real estate is hereby waived, and condemnation agreed to.

"And further, I, the above named John D. Gallatin, do hereby authorize and empower the prothonotary of the court of common pleas or any attorney of any court of record, to confess and enter judgment against me, my heirs, executors or administrators, for the above mentioned penalty in favor of said The Anchor Building and Loan Association, its successors or assigns, with costs of suit, attorney's fees and release of errors.

"Witness my hand and seal the day and year above written.
"Sealed and delivered in the presence of

"  JOHN D. GALLATIN.

" HENRY BOLL."                                    [SEAL]

[Indorsement.]

"No. 81, October term, 1899; $2,625; 15 series; judgment bond of John D. Gallatin to the Anchor Building and Loan Association, of York, Pa. Filed and entered October 25, 1890.
"GEO. FISHER, Attorney."

The court entered judgment in favor of the plaintiff, according to the third proposition of the case stated, for $2,256.25 with interest from January 17, 1896.

*Error assigned* was entry of judgment for plaintiff.

*J. W. Latimer*, of *Latimer & Schmidt*, with him *E. Chapin*, for appellant.—This right of appropriation by the debtor continues after the payment until the creditor shall have exercised his right to appropriate.

The debtor's appropriation may be evidenced by circumstances, and need not be by express language. It may be shown by verbal declarations, or by an account rendered, showing application, or by any language or any acts which manifest his intention: Moorehead v. Bank, 3 W. & S. 550; Bank v. Moorehead, 5 W. & S. 542; Chase v. Bank, 66 Pa. 169; Gas Co. v. Johnson, 123 Pa. 593; Stone v. Seymour, 15 Wendell, 25; Chambers v. Jaynes, 4 Pa. 44; P. & R. R. R. v. L. Nav. & Coal Co., 36 Pa. 213; Scott v. Fields, 7 Watts, 360; Dickey v. Land Co., 63 Md. 177; Treadwell v. Moore, 34 Me. 112; Reed v. Boardman, 20 Pick. 446.

A creditor receiving money or its equivalent must apply it as the debtor directs. A creditor cannot change the destination of money without the debtor's consent: Martin v. Draper, 5 Watts, 544; Watt & Co. v. Hoch, 25 Pa. 411; Smuller v. Union Canal Co., 37 Pa. 68; Bank v. Macalester, 9 Pa. 475; Tagg v. Bowman, 108 Pa. 277; Starkweather v. Kittle, 17 Wendell, 24; Grove v. Hodges, 55 Pa. 504; Jennings v. McComb, 112 Pa. 518; Pennsylvania R. R. v. Bost, 104 Pa. 26; Flannery v. Dechert, 13 Pa. 504; Guilinger v. Zahniser, 5 Cent. Rep. 303; Kupfert v. Building Assn., 30 Pa. 465; Hughes's App., 30 Pa. 471; N. A. Building Assn. v. Sutton, 35 Pa. 463; Spring Garden Assn. v. Tradesmen's Assn., 46 Pa. 493; Endlich on Building Assn., sec. 478; Strohen v. Franklin Saving and Loan Assn., 115 Pa. 273; Watkins v. Building and Loan Assn., 97 Pa. 514; Building Assn. v. Hungerbuehler, 93 Pa. 262.

*Smyser Williams* and *M. Sergeant Ross*, with them *Richard E. Cochran* and *H. C. Brenneman*, for appellee.—No credits can be allowed the defendant on his bond for payments made as weekly

dues on his stock, for the association having become insolvent, this stock is nearly or quite worthless. The insolvency puts an end to its operations as a building association; to a certain extent, it also ends the contract between it and its members respectively, and nothing remains but to wind it up in such a manner as to do equity to creditors and between the members themselves: Strohen v. Franklin Saving & Loan Assn., 115 Pa. 279; Endlich on Building Assn. (2d ed.), secs. 77, 339; McGrath v. Hamilton Savings & Loan Assn., 44 Pa. 385.

The liability to contribute to the losses is not in any way affected by the fact that the member has become a borrower: Endlich on Building Associations (2d ed.), sec. 79; Callahan's App., 124 Pa. 138.

It is a well-recognized doctrine that payment of dues upon stock are not payments on the loan and do not, ipso facto, work an extinguishment of so much of the loan: North American Building Assn. v. Sutton, 35 Pa. 463; Spring Garden Assn. v. Trademan's Loan Assn., 46 Pa. 493; Watkins v. Building & Loan Assn., 97 Pa. 525; Economy Building Assn. v. Hunger-buehler, 93 Pa. 258.

The immediate appropriation of these weekly dues as payments on the bond was not contemplated by either party, such appropriation would have extinguished the stock, and the defendant would have been no longer a stockholder.

A building association is in fact, and in law, a partnership with corporate rights, in which every stockholder is a member: National Savings, Loan & Building Assn., 9 W. N. C. 79; Christian's App., 102 Pa. 189; Endlich on Building Assn. (2d ed.), sec. 514; Building Assn. v. Robinson, 46 Leg. Int. 5.

The order prescribed by the by-laws of a building association for the payment of money out of its treasury to different classes of members does not apply to the distribution of its assets when insolvent: Criswell's App., 100 Pa. 488; Saving and Loan Assn. v. Carroll, 15 Pa. C. C. 524.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 16, 1898:

This appeal from judgment of the court below, on the case stated in an amicable scire facias sur judgment on bond to the Anchor Building and Loan Association, involves the construction of a clause in said bond providing for the appropriation of

payments in liquidation of the debt evidenced by the bond. The facts appear in the case stated and need not be recited here.

When the question as to the effect of such payments on building and loan association stock first arose in this state it was held that all payments were to be credited to the debt created by the loan: Kupfert v. Guttenberg Building Association, 30 Pa. 465; Hughes's Appeal, 30 Pa. 471. In Building Association v. Sutton, 35 Pa. 463, Mr. Justice Strong said: "The doctrine of those cases was perhaps in advance of the general understanding. . . . What was then said is not to be regarded as laying down the rule that payment of dues on the stock, ipso facto, works an extinguishment of so much of the mortgage. The debtor may so apply it, but the payment itself is not an application of the money to the reduction of the mortgage." In Philadelphia Mercantile Loan Association v. Moore, 47 Pa. 233, it was said: "The assignment of the stock as collateral was not a discharge of the loan to the extent of the instalments paid. The declaration that it was given as collateral negatives this."

The last cited case shows how the debtor may put it out of his power to appropriate the payments on the stock to the extinguishment of the debt. In that case the debtor made two successive loans from the association, with assignments of some stock as collateral. The Court said " he might have appropriated the sum of the instalments paid to the discharge of the debt, but he did not. On the contrary, on the 8th of October, 1859, when he borrowed from the plaintiffs an additional sum of $400 and made another assignment of the same stock as collateral security for the repayment of the second loan, he elected not to treat the first assignment as a partial payment of the first bond, and pledged the stock as a living security for the payment of the second. It is true that without the consent of the company he could not pledge it for the payment of a second debt until that for which it was first pledged had been paid; but when the company assented, as they did, by receiving it as a collateral for the security of the second loan, he had no longer any right to insist that it should be applied to the discharge of the first." In Wadlinger v. Washington German B. & L. Association, 153 Pa. 622, the principle of that case was recognized and applied to the case of a second assignment to a stranger.

These and other cases that might be cited distinctly recognize the right of the debtor to direct appropriation of the payments on the stock to the extinguishment of the debt. His power to so direct before the intervention of the rights of creditors cannot be doubted. It is only where the rights of creditors attach, by assignment, as in the cases last cited, or by legal process or insolvency as in Strohen v. Franklin Saving and Loan Association, 115 Pa. 273, that the debtor's right of appropriation is forfeited. Until thus forfeited, his right remains. He may appropriate or refuse to appropriate payments on stock in liquidation of the loan, even after default and suit on the bond : Watkins v. Workingmen's B. & L. Association, 97 Pa. 514; or after sale of his realty by the sheriff : Early & Lane's Appeal, 89 Pa. 411. Bearing in mind these principles, in which all the cases substantially agree, it clearly follows that where the appropriation is made at the inception of the contract of loan, it cannot thereafter be successfully questioned.

The question under consideration was virtually decided in Hemperley v. Tyson et al., 170 Pa. 385. One of the by-laws in that case, as quoted in the charge of the trial judge, provided " that when the stock gets to be worth $200, in the case of a person who has borrowed money on his stock from the saving fund, the stock shall be applied to the payment of the money borrowed, and it shall revert to the corporation." The trial judge charged : " Our judgment in relation to that article in the by-laws is that it made this stock the primary fund for the payment of the mortgage, and the one to which the saving fund should first resort to pay itself back the money it had loaned to Anna Tyson." This construction was held to be free from error. In that case there was also the following stipulation in the nature of an assignment: " The amount realized from said stock to be appropriated towards the payment of any amount in which I may be indebted to said association either on account of the principal of said debt, interest, premiums or fines for which I am now or may hereafter become responsible to said association." It is apparent from the language employed that this is not a collateral, but a direct, assignment. Speaking of the election by the assignor to appropriate the amount realized from the stock in payment of the association's loan to her, our Brother McCollum said : " This election shows that it

was her purpose to make the stock fund primarily liable for the loan, and the acceptance by the association of the assignment subject to the election involved an agreement on its part to so regard it. The subsequent action of the association was therefore in strict accordance with the mutual purpose and understanding of the parties to the transaction and with the nineteenth section of the by-laws of the association. . . . The borrower, after her election, could not compel the lender to sell her real estate before resorting to the stock fund for payment of the loan, nor could her creditor do so."

In the case now before us, article 4, section 5 of the by-laws provides, inter alia, as follows : " The security shall be real estate, or by the borrowing member assigning his share or shares of stock to the association in pledge, or by giving the association such bonds or notes in pledge as security for said loan as the directory may deem sufficient." The bond which the association demanded and received from the defendant under this by-law contains this clause : " And further, I, the above named John D. Gallatin, do hereby expressly agree that all money heretofore paid or hereafter to be paid by me into the association on the stock I now hold in the same shall be taken and considered as payment on and in liquidation of this bond." This language is so clear and explicit that it leaves nothing for either inference or construction. It is an agreement that is mutually binding alike upon the defendant and the association, and was manifestly intended to operate as an express appropriation, and not a direction to appropriate : Chase v. Bank, 66 Pa. 169. Indeed it is difficult, if not impossible, to conceive of language more positively expressive of an appropriation ; and our judgment would safely and securely rest alone upon the agreement of the parties as clearly and unequivocally expressed by them in the clause above quoted. The application of the payments having been thus explicitly agreed upon at the inception of the contract, the learned court below erred in not entering judgment accordingly. Both assignments of error are sustained.

Judgment reversed, and judgment is now entered in favor of the plaintiff for five hundred and eighteen seventy-five one hundredths dollars ($518.75), with interest from January 17, 1896, in accordance with the first proposition in the case stated.