# Freemansburg Building & Loan Association *v.* Watts, Appellant.

199      221
  29 SC ¹268
f 29 SC ¹270

199      221
e 31 SC  519

199      221
d218      525

*Building and loan associations—Duties of borrowing members.*

In carrying out the plan on which building associations are organized and conducted, it is not intended that a stockholder who borrows of the association will discharge the debt he incurs by direct payments on account of it. He pays at stated periods the dues on his stock, the interest on the money borrowed, and, when the premium bid for the loan has not been deducted, the instalments on it. When by the receipt of dues, interest, premiums and fines for nonpayment of dues, all of the stock of the association or of the series to which the borrower's stock belongs, becomes full paid or matured, the value of his stock equals the amount of his debt, and the transaction is then ended by the surrender of the stock by him and the cancellation of his obligation by the association. Per FELL, J.

Where a borrowing member of a building and loan association gives the association an obligation which provides for the payment of the principal debt in equal monthly instalments until the whole is paid "according to

the act of assembly, and the terms and provisions of the constitution and by-laws of said association," the monthly instalments cannot be appropriated to a direct payment on account of the loan with the effect of leaving dues on the stock unpaid.

Argued March 13, 1901. Appeal, No. 87, Jan. T., 1901, by defendants, from judgment of C. P. Northampton Co., Feb. T., 1901, No. 51, on trial by court without a jury in the case of The Freemansburg Building & Loan Association, to use of Jacob B. Kemerer and J. Stewart Shick, Assignees of the said The Freemansburg Building & Loan Association for the benefit of creditors, v. Henry C. Watts, Administrator of Sarah A. Watts, Deceased, and Henry C. Watts. Before McCol-LUM, C. J., MITCHELL, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Scire facias sur mortgage.

The case was tried by the court without a jury, under the act of April 22, 1874.

SCOTT, J., filed the following opinion:

Sarah A. Watts became the holder of ten shares of stock in this building association on November 23, 1896. She borrowed therefrom $1,000 February 22, 1897, and in addition obtained a similar loan on April 26, receiving in the aggregate $1,800 as the net amount, less premiums paid. To secure the payment of this sum she had previously executed with her husband, a bond and mortgage, dated November 30, 1896, the time application was made for the money.

The condition of the obligations provided for the payment "of the just sum of two thousand dollars in equal monthly instalments of ten dollars each on the fourth Monday of each and every month during the time the said principal sum remains unpaid according to the act of assembly and the terms and provisions of the constitution and by-laws of said association, and interest thereon payable in like monthly instalments of ten dollars." The mortgage stipulated that the first instalment of principal and interest should commence on December 28, 1896. The certificate for the ten shares of stock was assigned to the association as collateral security, subject to the continuing liability of the assignor to pay the dues. The mortgagor made

default at different times in her engagement, but paid $225 as interest altogether on the loans.   She paid also the further sum of $265, the appropriation of which, whether to mortgage indebtedness or the stock account, is the subject-matter of this dispute.   The building association became insolvent, and made an assignment December 11, 1899.   Neither prior to this last mentioned date, while the right of express appropriation existed in both, nor since, was any notice given by either that these payments would be applied in any particular manner.   As the insolvency of the association dissolved the ordinary contract relations of membership (Strohen v. Franklin Saving Fund & Loan Association, 115 Pa. 273), the liability of a borrowing stockholder is measured by the usual rules enforced between creditor and debtor.   The assignee of the mortgagee may recover the amount actually loaned with interest, less the sum actually paid on account of it (Strohen v. Franklin Saving Fund & Loan Association, 115 Pa. 273), or appropriated to the debt before knowledge of insolvency: Quein v. Smith, 108 Pa. 331.   Payments made on the stock are not afterwards to be applied to the mortgage, for others' rights have intervened: York Trust, etc., Company v. Gallatin, 186 Pa. 158.   Equitable distribution of the appreciated value of the stock in that series is then to be made among the shareholders.   The burden is upon the debtor, as in all other cases, to prove a discharge from any part of his indebtedness.

Stock payments before insolvency are not ipso facto a partial discharge of the mortgage debt.   " It is true according to former decisions, the mortgagor may apply his payments on the stock to the mortgage debt, a license to do so being implied in the nature of these building loan transactions.   The building association may also apply them by virtue of the terms of the assignment of the stock which is taken as collateral security. But in order to effectuate application of payments on stock to the debt, it requires an act of appropriation by one or the other of the parties: " Spring Garden Association v. Tradesmen's Loan Association, 46 Pa. 495.

In the plaintiff's association, article 6, section 2 of the bylaws required a borrowing member to transfer to the corporation one share of stock as collateral security for every loan of

$200, "and the interest on all loans shall be paid monthly from the time of bidding for the same."

"Each stockholder is held by his contract to compliance with all the by-laws and "to pay punctually his monthly dues, fines and interest:" Article 5, section 4.

By article 3, entitled dues and fines, "each stockholder for each and every share of stock shall pay . . . . the monthly contribution or sum of one dollar . . . . until the value of the whole stock in the series shall be sufficient to divide to each, and every share of stock the sum of two hundred dollars."

The accounts kept with defendant's intestate by the association and the entries in the pass-book retained by her, are made up under the respective designations of "dues," "interest," "extra," "fines." As this controversy relates to the sum of $265, paid and credited under this first stated heading, the meaning of which is defined by the by-laws above cited, of the association, to embrace stock payments, there is little room for discussion of the question of appropriation to the debt itself, irrespective of other evidence. Proof of payments made by defendant in any case will not be sufficient to apply them to the loan. "Presumptively they were for fines and dues:" Selden et ux. v. Reliable Savings & Building Association, 32 P. F. Smith, 338.

It is the contention of the defendant that the recitals in the bond and mortgage which are hereinabove set forth, constituted at the inception of the contract, an appropriation to the discharge of the loan by the debtor of the monthly dues when paid: York Trust, etc., Co. v. Gallatin, 186 Pa. 150.

The provision of the bond in that case expressly stipulated that "all money heretofore paid or hereafter to be paid by me into the association on the stock I now hold in the same, shall be taken and considered as payments on and in liquidation of this bond." The chief justice said, "It is difficult if not impossible to conceive of language more positively expressive of appropriation:" p. 159.

The obligation of this defendant provided for repayment of the loan in equal monthly instalments of $10.00 each, and interest thereon to the same amount, "according to the act of assembly and the terms and provisions of the constitution and by-laws of the said association." The apparent effect of this written stip-

ulation alone without other considerations and relation to the by-laws is to require the payment of $10.00 each month directly on the debt, and $10.00 interest in addition to payment of $10.00 as dues under the by-laws on the stock which she held.   If these were the contract relations, there is nothing to imply that all money paid monthly in said amounts should be credited to the debt, when there is another open account demanding similar payment, nor is there anything in the written engagement which then makes particular appropriation of it; certainly not, in any event unless both accounts are satisfied each month in full, for when no more than $10.00 was paid (besides interest) whether this was received on the mortgage debt or on the stock is the very proposition in controversy, which the defendant must solve by proof.   The requirement to make monthly payments of $10.00 on the stock, under article 3 of the by-laws, is just as obligatory as the provision for repayment of the loan, and no more than $10.00 was ever paid monthly and credited as "dues."

The condition of the mortgage, however, by reference incorporates by-laws of the association into the contract.   They contain no provision respecting the manner in which the loan shall be repaid, except as implied from article 3, in line with the general business methods of such corporations.   The borrower " shall secure the payment of said loan with legal interest by satisfactory bond and mortgage," and for each loan of $200, transfer one share of stock as collateral: Article 6, section 2.   Each stockholder for every share held shall pay " the monthly contribution or sum of one dollar until the value of the whole stock in the series shall be sufficient to divide to each and every share of stock the sum of $200: " Article 3.   Under this plan of liquidation, all payments, without special directions otherwise in a particular case, are made on the stock, and when the whole value of that series (not the aggregate payments made thereon), is worth for distribution to the holders $200 on each share, the mortgage is satisfied, and the debt extinguished, as the association holds the certificate. If this were not done, the value of the stock could never equal the loans, and if the payments were not applied to the shares, the assignments as collateral would add nothing to the security. The only interpretation that seems admissible to the condition

of the mortgage that the loan shall be repaid in equal monthly instalments of $10.00, according to the provisions of the by-laws, is that payments shall be made on the stock, until the loan is discharged by making the stock equal in value to the debt. Without evidence at least of a different purpose this would be an express appropriation by the contract itself, of the monthly dues to the stock instead of to the loan. In York Trust Company v. Gallatin, supra, a similar provision of the by-laws substantially was written in the condition of the bond, and not made part of it, as here by reference. It was assumed and practically held that in the absence of the additional clause of specific appropriation, payments made other than interest were upon the shares. The evidence furnished by the ledger account of the corporation and the entries in the pass-book received by the defendant, is convincing proof that this arrangement was mutually adopted and accepted during the three years of membership.

The decedent became the owner of her shares in November, 1896. The loans were not effected until February and April following, but by the terms of the mortgage the first instalment of principal and interest was to commence December 28. Her account with the association opens in November, and she is charged $10.00 in the "dues" column, but nothing for interest, and payment of the same is credited. In December a charge is made of $10.00 for dues and $5.00 interest, and so entered and paid each month until June, after the last $1,000 had been received. From December to May but $1,000 stands in the "loan" column of the monthly account after which time the additional $1,000 appears. As $5.00 only was charged monthly until June for interest, because only half the loan had been actually received, if the entry under the head of "dues" had been charged and paid as an instalment on the mortgage debt eo nomine, the proportionate appropriation would have been $5.00 also, instead of $10.00, the amount of stock dues.

The item paid in November, before the defendant was a borrower at all, was necessarily a stock payment. From that time to the end, the entries of debit under the designation of dues, follow exactly the account begun in November, when she was not a debtor. As no additional monthly charge of $10.00 was ever entered or paid, it is clear the parties did not contemplate

that the debt was to be satisfied in any way other than by payment of the monthly dues on the stock.  If the debt itself was to be treated as discharged pro tanto by the amount of monthly dues, why should interest be paid for several years on the original principal sum?  If the contract itself did not make this appropriation, the association, with the acquiescence of the debtor, did.  The aggregate sum in dispute was charged as monthly dues on the stock and so paid.

The amount for which plaintiff is entitled to judgment appears in the following statement:

| | |
|---|---:|
| Defendant received on two loans,    .   . | $1,800.00 |
| Interest on $900 from February 22, 1897 to November 13, 1898, . . . . . . | 93.30 |
| Interest on $900 from April 26, 1897 to November 13, 1898, . . . . . . | 83.55 |
|     Total, . . . . . . . | $1,976.85 |
| Credit interest paid to November 13, 1898, . | 225.00 |
|     Balance, . . . . . . . | $1,751.85 |
| Interest to February 11, 1901, . . . | 236.50 |
| | $1,988.35 |
| Fines imposed before assignment and unpaid, . | 13.80 |
| | $2,002.15 |

Upon payment thereof the debtor may demand reassignment of the stock and participate in distribution with other creditors of the insolvent corporation.

*Error assigned* was the judgment of the court.

*Harry C. Cope,* for appellants.—The application of the payments having been explicitly agreed upon at the inception of the contract, the instalments paid upon the stock are to be taken as paid upon the loan: Erthal v. Glueck, 10 Pa. Superior Ct. 412; York Trust, etc., Co. v. Gallatin, 186 Pa. 150; Hemperley v. Tyson, 170 Pa. 385.

*Russell C. Stewart* and *O. H. Meyers,* for appellees.—Where the stock of a building association is assigned as collateral security for a mortgage given to the association, payments on the stock are not ipso facto payments on the mortgage: North American Bldg. Assn. v. Sutton, 35 Pa. 463; Spring Garden

Assn. v. Tradesmen's Loan Assn., 46 Pa. 493 ; Link v. Germantown Bldg. Assn., 89 Pa. 15 ; Watkins v. Workingmen's Bldg. & Loan Assn., 97 Pa. 514.

The insolvency of the association prevents an appropriation by the borrower of his stock to the payment of his debt: Quein v. Smith, 108 Pa. 325 ; Christian's Appeal, 102 Pa. 184.

Testimony of the officers of such an association, that they considered the payments as, in law, payments on the mortgage, is not evidence of an appropriation of them to that object: Economy Building Association v. Hungerbuehler, 93 Pa. 258 ; Philadelphia Mercantile Loan Association v. Moore, 47 Pa. 233.

OPINION BY MR. JUSTICE FELL, April 29, 1901 :

The judgment appealed from is clearly right, and it is fully sustained by the reasons so well stated by the learned judge of the common pleas. The obligation which the borrower gave to the association provided for the payment of the principal debt in equal monthly instalments until the whole was paid, " according to the act of assembly and the terms and provisions of the constitution and by-laws of said association." Only one meaning can be given to the obligation without ignoring entirely the relation of the parties to each other. In carrying out the plan on which building associations are organized and conducted, it is not intended that a stockholder who borrows of the association will discharge the debt he incurs by direct payments on account of it. He pays at stated periods the dues on his stock, the interest on the money borrowed, and, when the premium bid for the loan has not been deducted, the instalments on it. When by the receipt of dues, interest, premiums and fines for nonpayment of dues, all of the stock of the association or of the series to which the borrower's stock belongs, becomes full paid or matured, the value of his stock equals the amount of his debt, and the transaction is then ended by the surrender of the stock by him and the cancellation of his obligation by the association.

Frequently, the obligations taken by building associations from borrowing members very imperfectly express the true relation of the parties to each other, as determined by the object in view and the rules for the government of the association, but they should never be considered as establishing a new relation

at variance with the fundamental principles on which such associations are organized and conducted, unless the language used will admit of no other construction.   A member who borrows of the association remains a stockholder, under a duty to pay the dues on his stock regularly, and subject to a penalty for non-payment.   The payment of these dues is an indirect payment on account of the loan, as the payment increases the value of his stock and thus adds to the collateral pledged by means of which payment is to be made in the end.   But if these payments are considered as direct payments, the result is that he has paid nothing on account of his stock notwithstanding his obligation to do so; he has been charged with fines for non-payment when payment was not required; his instalments of interest have remained the same although his debt has been gradually reduced by regular payments; his stock, on which he has paid nothing, has participated in the profits which have accrued to all the stock alike; and in the case of the insolvency of the association, we have the rank injustice that the burden of the whole loss is cast upon the non-borrowing members.

York Trust, etc., Co. v. Gallatin, 186 Pa. 150, which is relied on by the appellant, was decided on the ground that by agreement of the parties an express appropriation had been made of all payments by the borrower.   That case stands on its own facts, and it is not one to be reasoned from.

The judgment is affirmed.