## R. C. Clement Building Association v. Ortenz.

*A. S. C. Millar*, for plaintiff; *Summerfield & Mirarchi*, for defendant.

LEWIS, J., Oct. 5, 1928.—On April 14, 1925, the defendant borrowed from the R. C. Clement Building Association $400, and assigned his twenty shares of stock as collateral security for the repayment of the loan. The value of his stock at that time exceeded the amount of the loan. He then executed a note, which, in form, is as follows:

$400.00                                                        Phila., April 14, 1925.

20 Shares, 1st Series.

One day after date I promise to pay to the R. C. Clement Bldg. Ass'n or order, for value Received, Four hundred Dollars, for Loan made me on 20 shares 1st Series, Book Nos... of said Association, and I hereby transfer Collaterally to said Association, to secure to it the amount of the Loan named, as well as the monthly payments required, 20 Shares of the 1st Series of said Association.

And I do for myself, my·heirs, executors, administrators and assigns, agree that all moneys heretofore or hereafter paid by me to said Association upon said pledged shares shall be considered as made in liquidation of this loan. Should I default in payment of the principal when called, or of the dues, interest, premium, or fines due to said Association, for a period of six months, I authorize it to forfeit the shares hereinabove named and retain therefrom whatever may be due the Association on account of this loan, interest, fines, etc.

Witnessed by                                                EUGENE ORTENZ.

R. C. CLEMENT.

Following the making of the loan, the defendant paid dues on his stock, amounting to $20 per month, with interest on the loan, amounting to $2 per month, on eight separate occasions.

On Aug. 24, 1926, Peter G. Cameron, Secretary of Banking of the Commonwealth of Pennsylvania, under the authority vested in him by the provisions of the Banking Act of 1923, took possession of the business and the property of the R. C. Clement Building Association, and, acting through his

special deputy and agent, William R. Smith, made demand upon the defendant for the repayment of the sum of $400, together with interest thereon. Upon defendant's refusal to pay, the present suit was instituted.

The defendant maintains that in settling and adjusting the matter, he was legally and equitably entitled to set off against the original amount of such loan the withdrawal value of his twenty shares of stock; that by the terms of the note which he executed in favor of the building association, he determined that the instalments paid upon the stock should be applied against the sum borrowed by him, and, further, that the express terms of the note operated as an appropriation of the payments on the stock to the extinguishment of the loan.

On behalf of the plaintiff, it is asserted that the defendant, in continuing to pay dues on his stock, as well as interest on his loan, clearly indicated the relationship between himself and the association to be that of lender and borrower; that in paying the dues on his stock he continued to recognize his ownership of the stock, and by paying interest on his loan he continued to recognize his debt to the association.

The principal object of a building and loan association is to create a loan fund for the benefit of its members, the underlying idea being that by means of the system of small periodical payments provided, people of limited means will be enabled to become the owners of homes, and thrift, economy and good citizenship will thereby be promoted. The general plan upon which building and loan associations are organized places a borrowing member in a dual relationship to the association; as a stockholder, he is a member of, and, in theory at least, participates in the management of the association. In that capacity he shares the expenses of the business, the losses and profits, as would a stockholder of any other corporation. As a borrower, he simply receives an advance on the par value of his stock, agreeing to pay the legal interest during the time that he has the money of the association, with the expectation that his stock will reach par value or "mature about the time fixed for the payment of the loan." To state it differently, a borrowing member of a building and loan association, in his capacity as borrower, is a debtor; in his capacity as shareholder, he is a member of the corporation; what he pays as interest is paid in his character as debtor on his loan; what he pays as stock dues is paid in his character as a stockholder. The two are separate and distinct and must be dealt with as such.

Each monthly payment made by a borrowing stockholder consists of three parts, and is so credited on the books of the building and loan association, to wit, interest, premium and dues. "Dues are ordinarily credited as payment on stock, interest and premium going to the general fund, and constitute the earnings of which a member's stock gets its *pro rata* share, after expenses of the association and losses, if any. The insolvency of an association puts an end to its business operation, at least so far as future performance is concerned, and to a certain extent also ends the contract between it and its members respectively." See 4 Ruling Case Law, 386.

What is the basis or mode of settlement between the association and its borrowing members in case of its insolvency before the maturity of its stock? Where a building association becomes insolvent, three views, respectively known as the Maryland, Pennsylvania and Illinois rules, have been advanced in regard to the relative rights and obligations of the borrowing and non-borrowing stockholders. For a discussion of these rules, see 9 Corpus Juris, 981, and the "Law of Building and Loan Associations" (2nd ed.), by Joseph H. Sundheim, Esq., of the Philadelphia Bar, page 129. The Pennsylvania

rule is that the borrowing stockholder is entitled on insolvency to be credited on his loan for the amount of his premium and interest paid. He is not entitled, however, to credits on the loan for payments made as dues. He is required to pay what he actually received, with interest. The amount paid by the borrowing stockholder as dues on stock stands to his credit on the books of the association until the time for final adjustment, when he and all other stockholders, borrowers and non-borrowers, will be paid *pro rata* from the fund for ultimate distribution.

The rule in Pennsylvania, however, recognizes the "appropriation" by the borrower of dues or payments on account of the loan toward the repayment of the loan when such "appropriation" is made prior to insolvency; but unless there is some evidence of appropriation by the borrower, stock payments are not applied to the repayment of a loan. The President Judge of the Court of Common Pleas No. 5, in Broad and Erie Building and Loan Ass'n *v.* Steward, 4 D. & C. 341, says: "The borrowing of money by a stockholder of a building and loan association establishes two relations, that of borrower as well as that of stockholder, and the decisions of the courts seem to be uniform that where stock is assigned by a borrower to secure his loan, payments upon the stock may be applied upon the loan by the association, but in the absence of such application, they are not to be deemed payment upon the loan. This was the effect of Erthal *v.* Glueck, 10 Pa. Superior Ct. 402, and Bier *v.* Keer, 70 Pa. Superior Ct. 570. It is just as firmly established, however, that the stockholder can, by his assignment of his stock, direct how the instalments payable upon the stock shall be applied, whether upon the sum borrowed by him or not. In other words, the terms and provisions of the assignment govern the application of the payment upon the stock so assigned:" Franklinville B. & L. Ass'n *v.* Silberman, 10 D. & C. 757 (1928). The borrower will also be given credit for dues paid on stock, when the bond provides that all money paid by him into the association or stock held by him "shall be taken and considered as payment on and in liquidation of this bond."

In York Trust, Real Estate and Deposit Co. *v.* Gallatin, 186 Pa. 150, the court held that such provision is an appropriation of the payments to the loan at the very inception of the contract and before any other persons' rights have attached. The borrower, therefore, may at any time before insolvency of the association elect to have his payments apply directly on the debt. A similar provision in the assignment of stock, when it is being assigned as collateral at the same time the bond and mortgage are being given, will serve the same purpose.

In Kurtz *v.* Campbell, 31 Pa. Superior Ct. 516 (affirmed in 218 Pa. 524), the Supreme Court made the following significant statement: "This case is clearly within the rule of York Trust, Real Estate and Deposit Co. *v.* Gallatin. 'The majority of the court are of the opinion that on principle the case was erroneously decided, but as it has stood in the books for nine years, and many contracts have been made in reliance on it, the principle of *stare decisis* should prevail, and the authority of that decision should not now be disturbed.' "

Freemansburg B. & L. Ass'n *v.* Watts, 199 Pa. 221, the court, again referring to York Trust, Real Estate and Deposit Co. *v.* Gallatin, said: "That case stands on its own facts and it is not one to be reasoned from."

The Superior Court, in Globe Mutual B. & L. Ass'n *v.* Schutte, 29 Pa. Superior Ct. 265 (1905), construed the following endorsement on the back of the bond which the borrowers had given to the building and loan association: "For value received by Henry Shutte, the within named obligor does hereby

assign, transfer and set over unto the Globe Mutual Building and Loan Association of Pittsburgh the five shares of stock held by me in said Association as collateral security for the payment of the debt mentioned in the within Bond, and, further, I do hereby elect to treat all past and future payments of dues and premiums on said stock as credits on the within bond and mortgage referred to below, and I authorize and direct the officers of the said association to so appropriate and credit the same." Smith, J., said: "This association was to be governed by the acts of assembly relating to building and loan associations, with like privileges and responsibilities of its members. Payments received from all sources go into the general fund of the association, to be periodically divided as profits among all the shareholders according to the amount of stock held by each. With the appointment of a receiver, the business of the association as such ceased; nothing then remained but to wind up its affairs in such a manner as to do equity to the creditors, and between the members themselves, according to their rights and liabilities respectively. In the present case the amount due the association was $1000, and Mr. Shutte, under his contract, was required to pay as other stockholders. As a borrower, he should be charged with his actual indebtedness, with interest, according to his contract, before participating like non-borrowers, and should bear his share of the losses. But to allow him credit for payments on his stock, as now contended for, would enable him to escape this responsibility and throw it wholly on the non-borrowers. In this common enterprise the stockholders must bear their share of the losses and profits according to their contract and respective holdings. Further, on this question, Judge Frazer, in the opinion overruling the motion for a new trial, very pertinently said: 'While possibly, under the case of York Trust, Real Estate and Deposit Co. v. Gallatin, 186 Pa. 150, an appropriation of dues and premiums to a mortgage indebtedness might be sustained under some circumstances, those circumstances *should be such as to leave no doubt whatever as to the assent of both parties to the agreement.* In this case, while Mr. Shutte, by the endorsement upon his bond, elects to have his payments on account of stock credited to his indebtedness, we have nothing before us to indicate an agreement upon the part of the association to so treat such payments. . . . That the association did not treat the payments made by Mr. Shutte as payments on account of his loan is evidenced by the fact that such payments were credited in the books of the association, and also in his pass-book, as payments upon account of dues and premiums, and it also appears by both the books of the association and the pass-book that he was credited on the stock with the profit accruing to his shares. The pass-book in his possession showed these weekly credits and also the profits realized upon his stock, and having permitted these payments to be so appropriated and credited, and having received his dividends, it seems to us that such action upon his part was a ratification of the appropriation of his payments made by the association, and sufficient notice to him that the association did not recognize his election to have the payments appropriated to the loan in direct conflict with the requirements of the by-laws of the association.' The Supreme Court quoted from Freemansburg B. & L. Ass'n v. Watts, 199 Pa. 221, as follows: 'A member who borrows from the association remains a stockholder under a duty to pay the dues on his stock regularly, and subject to a penalty for non-payment. The payment of these dues is an indirect payment on account of the loan, as the payment increases the value of his stock, and thus adds to the collateral pledged, by means of which payment is to be made in the end. But if these payments are considered as direct payments, the result is that he has paid nothing on account of

his stock, notwithstanding his obligation to do so; he has been charged with fines for non-payment when payment was not required; his instalments of interest have remained the same, although his debt has been reduced by regular payments; his stock, on which he has paid nothing, has participated in the profit which has accrued to all the stock alike; and in the case of insolvency of the association, we have the rank injustice that the burden of the whole loss is cast upon the non-borrowing members.' If the defendant's contention prevailed, Mr. Shutte would receive dividends upon the stock upon which he has paid nothing, and also the 'rank injustice' of his being relieved from his share of the burden of the association's loss."

The wording of the note in the case before us, together with the conduct of the defendant, clearly indicates defendant's conception and understanding of the relationship between him and the building and loan association. The evidence shows that at the time the loan was made the value of the twenty shares of stock in the first series exceeded $400. If the contention of the defendant be adopted, it is apparent that on April 14, 1925, and after borrowing $400 from the association, defendant did not owe it any money whatsoever, because the value of his stock exceeded the amount of the loan. His subsequent conduct will then become absolutely inconsistent with his present contention.

There is no need to labor this point any further. It is perfectly obvious that the defendant, by continuing to pay dues on his stock and by paying interest on his loan, recognized his continued ownership of the stock, which, of course, is totally inconsistent with his present contention of "appropriation." The stock was assigned as collateral security only.

It is settled that demands to be set off must be mutual and that debts accruing in different rights cannot be set off one against another. In view of the dual relationship of membership and debtor between the association and the borrowing stockholders, as above pointed out, the equitable doctrine of set-off as payment by the defendant stockholder is not applicable to this case.

The dues paid by the defendant were credited directly as payments on the stock and the interest went into the general fund and constituted the earnings, of which a member's stock gets its *pro rata* share after the expenses of the association and losses, if any, are paid. The contract of the defendant in this case cannot be treated as one of simple loan, because by doing so the relationship of the defendant as stockholder would be mere fiction.

The insolvency of the association put an end to its business operations, and the defendant, being a borrowing member, will be compelled to pay up his loan at once. The purpose of the association having failed, the contractual obligations between the association and its members were dissolved except for the purpose of liquidation. Moreover, if the defendant should prevail, he would obtain an advantage over the non-borrowing members of the association. In spite of his conduct in recognizing the loan and paying interest thereon, he would be relieved of his share of the burden of the association's loss. This, it seems to us, both on principle and authority, ought not to be permitted.

The court, therefore, enters a finding in favor of the plaintiff in the sum of $436.